## RODENBOUGH v. UNITED STATES.

Circuit Court of Appeals, Third Circuit.
March 28, 1928.

No. 3702.

**1. Statutes ⊙⟿181(1)—Fundamental canon of statutory construction is to ascertain and give effect to legislative intent.**

The fundamental canon of statutory construction is that courts should ascertain and give effect to the intent of the legislative body.

**2. Statutes ⊙⟿184—Construction of statute which is rational and sensible, and which bears most directly on legislative object, should be selected where two constructions are possible.**

When, because of doubtful language in a statute, two possible intentions appear, the courts must select the one which is rational and sensible, and which bears most directly on the object which the legislative body sought to obtain, or the evil which it endeavored to remedy or avoid.

**3. Statutes ⊙⟿191—In construing statutes, courts should adhere closely to commonly understood meaning of words in immediate relation to their subject-matter.**

In ascertaining intent of Legislature, courts are careful not to be led astray by definitions of single unrelated words of statute being construed, or by the refinements of lexicographers, but adhere closely to the use of words in their commonly understood meaning and in immediate relation to their subject-matter.

**4. Statutes ⊙⟿245—Construction of taxing statute should favor citizen and be against government.**

In construing a tax act, courts are required to incline most strongly against the government and in favor of the citizen.

**5. Statutes ⊙⟿184—Statute will be read in light of its purpose.**

A statute will be read in the light of its purpose.

**6. Internal revenue ⊙⟿8(14)—Statute authorizing deduction, for estate tax purposes, of property received in "exchange" for property inherited within five years, held to authorize deduction of property into which inherited property can be traced (Revenue Act 1918, § 403 [a], subd. 2 [Comp. St. § 6336¾d]).**

Revenue Act 1918, § 403 (a), subd. 2 (Comp. St. § 6336¾d), providing that, from the value of resident decedent's net estate shall be deducted for estate tax purposes an amount equal to value at decedent's death of any property identified as having been inherited by decedent within five years prior to his death, or as having been acquired by decedent in "exchange" for property so received, *held*, not to limit right of deduction to one transaction of exchange by barter, substitution of one security for another, through medium of money or otherwise, but extends such right to any property into which inherited property can be traced, regardless of number of transactions involved.

**7. Internal revenue ⊙⟿28(2)—Presumption governing trustee's commingling of trust and personal funds held inapplicable in identifying money inherited within five years for estate tax deduction purposes (Revenue Act 1918, § 403 [a], subd. 2 [Comp. St. § 6336¾d]).**

Where decedent, within five years before her death, inherited property from her father, proceeds of which she deposited in her general bank account with money from other sources, burden on decedent's executor of identifying portion of deposit acquired in exchange for property inherited, to authorize deduction thereof from net value of decedent's estate for estate tax purposes, under Revenue Act 1918, § 403 (a), subd. 2 (Comp. St. § 6336¾d), could not be aided by presumption governing tracing of trust funds commingled by trustee with his own funds, whereby trustee, in making withdrawals for his own purposes, is presumed to have withdrawn his own funds.

**8. Internal revenue ⊙⟿27(2)—Discharge of executor from personal liability for estate tax does not bar action against him in representative capacity (Revenue Act 1921, § 407 [Comp. St. § 6336¾h]).**

Provision of Revenue Act 1921, § 407 (Comp. St. § 6336¾h), discharging an executor from personal liability for any additional estate tax on payment of amount assessed does not bar action against him in his representative capacity for such additional tax.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; William H. Kirkpatrick, Judge.

Action by the United States against Elmer E. Rodenbough, executor of the will of Elizabeth McCahan Rodenbough, deceased. Judgment for the United States (21 F.[2d] 781), and defendant brings error. Reversed and remanded for new trial.

See, also, 14 F.(2d) 989.

William C. Alexander, Jr., Porter, Foulkrod & McCullagh, and Walter Lee Sheppard, all of Philadelphia, Pa., for plaintiff in error.

George W. Coles, U. S. Atty., and Mark Thatcher, Asst. U. S. Atty., both of Philadelphia, Pa. (Clarence M. Charest and William T. Sabine, Jr., both of Washington, D. C., of counsel), for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The United States brought this action against Elmer E. Rodenbough, executor of the will of Elizabeth McCahan Rodenbough, to recover taxes on a sum claimed as a deduction in determining the decedent's estate tax and disallowed by the Commissioner of Internal Revenue under provisions of Section 403 (a)

(2) of the Revenue Act of 1918 (Comp. St. § 6336¾d), which read as follows:

"Sec. 403. That for the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

* * * * * * *

"(2) An amount equal to the value at the time of the decedent's death of any property, real, personal, or mixed, which can be identified as having been received by the decedent as a share in the estate of any person who died within five years prior to the death of the decedent, or which can be identified as having been acquired by the decedent in exchange for property so received, if an estate tax under the Revenue Act of 1917 or under this act was collected from such estate, and if such property is included in the decedent's gross estate."

A jury was waived and the case tried to the court on facts stipulated. Those presently pertinent are as follows:

W. J. McCahan, the father of Elizabeth McCahan Rodenbough, the defendant's decedent, died in 1918 leaving an estate of $14,688,694.20, on which a tax of $2,894,173.55 was paid. His estate consisted chiefly of stocks and bonds and Mrs. Rodenbough's share, which his executors gave her in kind, amounted to $3,831,506.22. Subsequently she sold some of the securities, others were paid off by the obligors, and one company of whose stock she held many shares went into liquidation and disbursed to her over $1,200,000. With these moneys, it is stated, Mrs. Rodenbough purchased or "acquired" other securities. She died in 1921. Her executor, in computing the estate tax, regarded the value of the securities she had purchased with the proceeds of the securities she had received from her father's estate deductible under the cited provisions of the Revenue Act of 1918. The Commissioner, however, thought otherwise and, first adding the same to her estate, determined a deficiency in taxes amounting to $113,000. Whereupon her executor appealed to the United States Board of Tax Appeals which found against the deficiency in the estate tax determined by the Commissioner on a holding that the value of the property so purchased was properly deductible, and, after making small adjustments, entered an order determining the deficiency to be the sum of $1,797.12, which the executor paid. 1 B. T. A. 477.

The Commissioner refused to acquiesce in the determination of the Board of Tax Appeals and brought this action against the executor to recover $111,852.58, the difference between the deficiency determined by him and that determined by the Board.

The learned trial court found on its construction of the cited provisions of the Revenue Act that the value of the father's property which in the hands of the decedent had thus revolved from one transaction to another was not deductible, and even if deductible in principle it was impossible on the facts to identify the estate of the father which, admittedly, had been taxed within five years. On the first ground and others to be mentioned presently, it entered judgment for the plaintiff for $144,849.04, the principal of its claim with interest. The defendant then sued out this writ of error.

The first question is whether the securities whose value is claimed as a deduction in determining the decedent's taxable estate constitute "property * * * which can be identified as having been acquired by the decedent in exchange for property" which she received from her father's estate. The government's position is based on a strictly literal interpretation of the word "exchange" as used in the statute. It contends that property whose value can be deducted in computing an estate tax must have been acquired in a transaction constituting an exchange in the sense of barter and that the statute excludes all transfers of property for money, and all exchanges of property with money as the media; that it limits the deduction to cases where only one exchange of that kind has taken place; and that none of the transactions by which Mrs. Rodenbough acquired the property whose value is now claimed as a deduction was an exchange within the statute thus construed, and, therefore, the question of the identification of those securities as having been purchased with the proceeds of securities received from her ancestor is immaterial. On the other hand it is the position of the defendant that —looking not to the form but to the substance of the transactions—the securities which Mrs. Rodenbough purchased to replace those she received from her father's estate (subsequently paid off, liquidated and sold) constitute property "acquired" (by her) in exchange for property so received, and that by tracing the proceeds through her bank account the securities whose value is claimed as a deduction can be identified as property so acquired.

The learned trial court in construing the statute did not confine its consideration to the single word "exchange" as strictly denot-

ing barter, but quite properly extended it to the phrase, "acquired * * * in exchange for" property received from the first decedent. Yet in doing so it held to the conception of exchange of one property for another, carrying the idea of substitution and extending it to what if not in form must be in substance an exchange of one security for another, giving this illustration (21 F.[2d] 781, 784): "Where the only facts that can be shown are that property was sold and that sometime subsequently other property of approximately the same value purchased, it cannot be said that the property so purchased was acquired in exchange for the property sold, even though it could be shown that it was purchased with the proceeds of the property sold." The court finally held that: "The fact, if it be a fact, that with the money so received [from the disposition of securities which the decedent had received from her father] she subsequently bought some of the securities now claimed [as deductible] does not bring those securities within the language of the deduction," as they were not "acquired in exchange" for the original securities and there was no relation between the original securities and those subsequently purchased except, in certain cases, the equivalence of the sums of money involved.

We have studied very carefully the construction which the learned trial judge gave the statute and have been impressed by his logical and closely knit reasoning, yet we find ourselves at variance with some of his premises and therefore opposed to his conclusions. [1-4] Before construing the statute in question we bring into view certain applicable, and helpful, canons of construction, the fundamental one being that courts should ascertain and give effect to the intention of the legislative body. 36 Cyc. 1106. When, because of doubtful language, two possible intentions appear, another canon of construction requires that courts shall select the one which is rational and sensible, Scandinavian Belting Co. v. Asbestos, etc., Works (C. C. A.) 257 F. 937, and which bears most directly on the object which the legislative body sought to obtain or the evil which it endeavored to remedy or avoid. Holy Trinity Church v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; Northern Pacific v. United States (C. C. A.) 213 F. 162, L. R. A. 1917A, 1198. In performing this responsible function courts are careful not to be led astray by definitions of single unrelated words of a statute or by the refinements of lexicographers, but to adhere closely to the use of words in their commonly un-

derstood meaning and in immediate relation to their subject-matter. Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305; Doyle v. Mitchell Bros. Co., 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. And particularly in construing a tax act, courts are required to incline most strongly against the government and in favor of the citizen. Gould v. Gould, 245 U. S. 153, 38 S. Ct. 53, 62 L. Ed. 211.

And so in construing this statute we first look at its subject; next search for its purpose in respect to some particular problem; and then find if we can the intention of the legislative body that enacted it. The subject of the act, without question, is taxation at death; and equally certain such taxation is not on the estate or property of a decedent but on the right to transmit his estate, ascertained in a way the statute defined. Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969; N. Y. Trust Co. v. Eisner, 256 U. S. 345, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660. Realizing that, unless avoided by legislative provision, the same or substantially the same estate would be twice taxed when two deaths occur successively within a short time, the Congress enacted the provisions in question with the general purpose or intention to avoid the hardship and inequity of double taxation. Its particular intention, however, is to be gathered from the particular manner by which, as specified in the statute, it proposed its general purpose should be carried out. Thus we see the problem which was before the Congress and we have in statutory form the manner in which it met it.

[5, 6] A statute must be read in the light of its purpose. Tucker v. Alexander, 275 U. S. ——, 48 S. Ct. 45, 72 L. Ed. ——. As it is clear that the Congress intended completely to avoid the inequity of double taxation, we shall, in order to effectuate its intention, give the statute a construction as broad as the intention itself. In laying this estate tax the Congress had two situations in mind. To meet them, it first provided that from the gross estate of a decedent there should be deducted an amount equal to the value at the time of his death of any property which he had received and continued to hold as a share in the estate of a prior decedent who had died within five years of his death and on which a tax had been paid. This provision contemplates the identical property which one person has "received" from another and

continues to hold at death. Believing that within five years, the period which it regarded as sufficient to avoid double taxation, the recipient might, and probably would, sell or otherwise dispose of some or all of the property so "received," the Congress, to meet such a case, carried its intention a step farther and provided that the decedent might also deduct the value of property he had "acquired * * * in exchange for the property so received," thus extending over transactions of two kinds—initial and secondary—protection against double taxation for a term of years. While this was its general intention, the Congress very well knew from human experience that a statute which expressed this intention and did nothing more would inevitably produce confusion in the computation of taxable estates and would result in loss of taxes to the government. Therefore it qualified the granted right of deduction by specifically limiting its exercise to such cases where, first, the claimant can *identify* the property as having been "received" by the decedent from another, and next, where he can identify the property as having been "acquired" in exchange for property so received. The Congress thus provided the particular way by which its general intention to legislate against double taxation should be carried out with fairness to the taxable and without loss to the government, and in so prescribing a way it placed the burden of identifying the property on the taxable which in order to obtain the granted deduction he must carry; a burden easy at times, difficult sometimes, and, it may be, impossible at other times. Yet the Congress made identification of the first decedent's property, whether in original or transmuted form, a prerequisite to the exercise of the granted right of deduction, and when identification is perfected the full intention of the Congress is effectuated. If that intention limits a deduction in respect of "acquired" property to a single transaction of exchange, as by barter or even the substitution of one property for another through the medium of money, it is evident we have misconceived the general intention of the Congress to afford means by which double taxation may be avoided. Take the not uncommon instance of a bequest to a woman who never in her life owned any property except that which she received under the bequest. During successive transactions of sale and reinvestment the *character* of the property which she originally received will of course disappear; yet, its identity as property received from her testator, the only

property she ever received from anyone, is preserved throughout and is, we think, the thing for which the statute allows a deduction. If the Congress had intended to limit the deduction to exchange in the sense of barter, or to a substitution of securities acquired in exchange for the precise property first received, it could easily have said so. But in using the phrase "acquired * * * in exchange" for property so received, we think it purposely employed an expression coextensive with its intention, Howes & Bros. v. Dolan, 9 Pa. Super. Ct. 586, 590, and broad enough to include barter, and exchange of one property for another through the medium of money, and the purchase of one property with the proceeds of the sale of the property first received and the purchase of other property with the proceeds of the sale of that first acquired by purchase and so on in the ordinary business devolutions of the property first "received" from the prior decedent—deductible never otherwise than on the condition that it be identified as such. We discern nothing in the statute which limits the right of deduction to one transaction of exchange whether it be barter, the substitution of one security for another, through the medium of money or otherwise. The only limitation that we can find is that of identification of property of the first decedent "received" or "acquired" by the last decedent on which a tax has been paid within the named term of years. In the absence of express provision, we cannot hold that the Congress discriminated between equally identified transactions according as they should occur in number and time through that period and allowed a deduction on the first transaction and disallowed deductions on the second and succeeding transactions, Blake v. National City Bank, 23 Wall. 307, 320, 23 L. Ed. 119, for such a discrimination would in many instances defeat the very intention of the Congress to avoid double taxation.

While our construction of the statute accords with that of the Board of Tax Appeals, the case as presented to the Board on appeal from the Commissioner and the case as tried to the District Court in this suit by the government differ in the treatment of the facts. In the case before the Board there was no dispute as to the facts or their inferences. As the Commissioner rested his case on his construction of the statute and did not deny that the proceeds of the property of the first decedent were invested by the last decedent in other securities and that the value of the latter securities was the deduc-

tion made by the executor, there was no issue of identification and, accordingly, the Board, regarding the identification of the securities as conceded, allowed deduction for the full value. But at the trial of this case before the District Court, the defendant, recognizing and accepting the burden of identifying the securities deducted as securities acquired in exchange for others received from the estate of the prior decedent, raised the issue of identification, which, as we read the record, the District Court did not try out because under its construction of the statute the securities whose value was deducted, even if traceable to the estate of the first decedent, were not in principle susceptible of deduction, casually indicating (we think without deciding) that even if deductible in principle they were not deductible in fact because on the evidence which the defendant produced they could not be identified. The case therefore must be remanded for trial on this issue, in respect to which we make these observations:

The elaborate stipulation of facts into which the parties entered shows that Mrs. Rodenbough deposited all moneys that came to her from all sources in one general bank account and that she thus commingled moneys originally her own and moneys which arose from the sale or other disposition of securities she had received from her father's estate. In order to trace moneys from her father's estate into the securities purchased or to trace the securities purchased back to her father's estate, the stipulation also includes a table disclosing the daily balances in her bank account running through the period in question and showing the sources of all moneys by which those balances were daily augmented; that is, moneys received from the sale and other disposition of the securities she had received from her father's estate and moneys received from other sources; and also showing withdrawals of money for the purchase of the securities whose value her executor claimed as deductible and withdrawals for other purposes. The defendant argues, from what of course is the fact, that in every instance when she withdrew money from her bank account with which to purchase a new security there was on deposit sufficient money to make the purchase, and also there was on deposit money previously received from the sale or other disposition of securities received from her father's estate sufficient to make the new purchase; yet the volume of money which she received from her father's estate as one source and that which she received from other sources

was in many instances such as to make doubtful from what source she withdrew moneys with which to make new purchases, and therefore doubtful whether the moneys withdrawn had at one time been her father's or had at all times been her own.

[7] Manifestly the defendant had to remove that doubt and conclusively prove that the withdrawal for each purchase was of money received from her father's securities in order to sustain his statutory burden of identification. This the defendant attempted to do not by producing evidence of the fact but by invoking the presumption governing the tracing of trust funds which a trustee has commingled with funds of his own, Knatchbull v. Hallett, 13 Ch. D. 696, whereby the trustee in making withdrawals for his own purposes is presumed to have acted honestly and withdrawn his own funds. We concur with the learned trial judge in holding that this presumption, based on a tortious commingling of trust and personal funds, does not apply to the instant case where the commingling was entirely of personal funds (though of different origins) and was honest and proper. Nor are we persuaded that the presumption arising from the trust fund rule is saved to the defendant on his contention that the decedent would ordinarily and naturally make new investments with the proceeds from old investments. Evans v. Commercial Trust Co., 76 Pa. Super. Ct. 304; 22 C. J. 106. Indeed, we are far from persuaded that "the probable inference which common sense enlightened by human knowledge and experience" indicates is that this lady, differing from our observation of others of her sex, reached into a common fund and carefully selected for reinvestment those moneys which had come to her from the sale and liquidation of particular securities that she had received from a particular source. Rather than setting up such a presumption, common experience, we think, indicates that she drew funds for reinvestment without thought of their source. This conclusion against the presumption drives the defendant to evidence of identification. If at the next trial he can produce evidence other than that stipulated, he may do so; if he cannot and the only evidence available is that stipulated in the form of the decedent's deposits, withdrawals and balances shown in her bank account, it will devolve on him to convince the court that, when properly analyzed, they distinguish between the two money sources and show figures by which the securities last purchased can be traced to the father's estate and be thus identified.

Whether this can be done from the stipulations and, if so, how far it can be done we do not venture an opinion. Yet as we look at the stipulated bank account (Exhibit F) and study it in connection with the stipulations identifying withdrawals for investments it tells several stories. For instance, take the first span beginning December 11, 1918, and ending January 18, 1919. This shows deposits from both sources (her father's estate and her own property), in each instance more than enough to cover the amount withdrawn for reinvestment; but it also shows an amount withdrawn for other purposes greater than the amount received from the sale of her father's securities. Therefore, no one can tell whether the two withdrawals, one for reinvestment and the other for general purposes, were from moneys coming from one source or from the other source and in consequence no one can trace or identify the same. But in the next span from the last date of January 18 to July 3, there is a different situation. In addition to the balance on January 18, there is shown a large deposit of moneys from her father's estate and a smaller deposit of moneys of her own and also withdrawals for reinvestment and withdrawals for other purposes, the first withdrawals being too large to have been wholly supplied from moneys of her own and small enough to have been embraced within moneys derived from her father's estate. In this instance certainly a part of the moneys reinvested must have come from the proceeds of her father's securities.

[8] Realizing that a proper analysis of the stipulated bank deposits and withdrawals can only be made by one skilled in such matters, we did not attempt a further tracing of securities but passed directly to the grand totals at the end of the stipulation, which show moneys received from sources other than her father's estate greater in amount than moneys withdrawn for general purposes leaving a balance of moneys withdrawn for investment which must have come from the proceeds of her father's securities. We make this more or less accurate analysis merely to indicate (not to decide) that on the record as it stands it may not be impossible to trace some of the decedent's withdrawals for reinvestment to the parental source. If her executor can trace and identify some, the estate comes within the statute and is entitled to a deduction of their value in computing the estate tax. Therefore the case must be remanded for retrial on this issue—unless this action in assumpsit

against the defendant executor is barred, as he maintains, by the provisions of Section 407 of the Revenue Act of 1921 (Comp. St. § 6336¾h) under which he claims he was discharged from personal liability and that such a discharge cannot be disassociated from his liability in a representative capacity.

On this question, as well as on that of allowance of interest on the deficiency, if one be found, we are in full accord with the reasoning and conclusions of the learned trial judge.

The judgment of the District Court is reversed and the case remanded for a new trial in accordance with the law of this opinion.