[Civil No. 2820.   Filed October 14, 1929.]

[281 Pac. 207.]

W. A. ROWLAND, Appellant, v. I. P. McBRIDE, HARRY THOMPSON, JAS. F. McDONALD, FRED STEGER, FLOYD WILLIAMS, as Members of the ARIZONA STATE HIGHWAY COMMISSION, W. C. LEFEBVRE, as State Engineer of the State of Arizona, J. C. CALLAGHAN, as Treasurer of the State of Arizona, and ANA FROHMILLER, as Auditor of the State of Arizona, Appellees.

See Highways, 29 **C. J.**, sec. 309, p. 584, n. 73; sec. 312, p. 586, n. 18.

Statutes, 36 **Cyc.**, p. 1071, n. 25, p. 1087, n. 92, p. 1134, n. 94, p. 1150, n. 40.

Messrs. Sloan, Holton, McKesson & Scott, for Appellant.

Mr. Fred Sutter, Mr. H. A. Elliott and Messrs. Elliott & Shimmel, for Appellees.

ROSS, J.—This is a taxpayer's suit, wherein the plaintiff, Rowland, seeks to prevent the defendants state highway commission and state engineer from improving a highway (and the auditor and treasurer

from paying vouchers therefor), extending from Casa Grande, in Pinal county, to Gila Bend, in Maricopa county, on a route surveyed and located by defendants, and to compel such defendants to construct such highway on a route which it is contended was located by the legislative act authorizing such improvement. Both preventive and mandatory relief is sought.

At the regular session of the eighth legislature, 1927, there was enacted chapter 101, which reads as follows:

"An act providing for the improvement of a highway in Pinal and Maricopa counties extending from Casa Grande to Gila Bend, and making an appropriation therefor.

"Be it enacted by the Legislature of the state of Arizona:

"Section 1. There is hereby appropriated out of the general fund of the state of Arizona, not otherwise appropriated, the sum of one hundred fifty thousand dollars, or so much thereof as may be necessary to be expended under the direction of the state engineer, for the purpose of improving the highway in Pinal and Maricopa counties, extending from Casa Grande in Pinal county to Gila Bend in Maricopa county.

"Section 2. The state auditor is hereby authorized and directed to draw his or her warrants upon the general fund for all claims for the construction and improvement of said highway when approved by the state engineer in amounts not in excess of the appropriation hereby provided for, and the state treasurer is hereby directed to pay the same."

The Fourth Special Session of the same legislature (1927) enacted, as an emergency measure, chapter 2, known as the Highway Code. This code is subdivided into seven chapters. It is very comprehensive, and, as its title indicates, was intended to provide "for the systematic and orderly administration of all matters and affairs directly affecting or concerning the highways of the state." It creates

the highway commission and gives it control of the highway department, which it vests "with the peculiar and express function of administering, in the manner provided by law, all matters and affairs, directly affecting, concerning or relating to the highways of the state." Chapter 2, §§ 1, 2, 3.

The highway commission and its executive officer, the state highway engineer, were, as they admit, in the act of proceeding to spend the $150,000 appropriated by chapter 101, *supra,* in the construction of a highway, from Casa Grande to Gila Bend, surveyed and located by them along a route some fifteen miles south of the highway designated in the act (as found by the court), claiming that their location was along a better and cheaper route, also claiming that chapter 101 did not designate any particular route, but left its location to the discretion of the commission and its engineer, also claiming that the Highway Code had modified or repealed chapter 101, and had transferred the appropriation thereunder into the state highway fund created by the Highway Code, to be expended at the sole discretion of the highway commission in the building or improvement of said highway.

Under this last proposition it is said:

"Either chapter 101 must fail wholly by reason of want of an authority to execute it, or it must be construed harmoniously with the Highway Code, so as to give effect to each in a manner, however, thoroughly consistent with the Highway Code."

The court, upon the issue as to whether there was a highway extending from Casa Grande to Gila Bend, and, if so, whether the legislative act intended the improvement to be along such highway, made the following finding:

"From the evidence introduced at the trial I am convinced that the highway described in the complaint is the highway referred to in Senate Bill 94

(chapter 101), and that it was the intention of the legislature that that highway should be improved by the expenditure of the funds appropriated.''

Notwithstanding this finding, the court entertained the opinion that the legislature intended, when it enacted the Highway Code, to give the work of constructing the Casa Grande-Gila Bend road over to the highway commission, using the funds appropriated in chapter 101, and with power and discretion to relocate the road. It therefore refused to grant the injunction as prayed for. (We will hereafter refer to the parties as in the lower court.) The plaintiff appealed from the judgment dismissing his complaint.

It must be conceded, we think, that the legislative location of the highway is binding upon the other departments of the state government. The executive department has no right to change the route, or select a different route, on the basis that it is better or cheaper. These were questions for the legislature to determine. The duty of the highway department was to build the road where the legislature said it should be built.

The defendants submit that the title of the act indicates the purpose of improving ''a'' highway between the termini named, and that therefore the enacting clause should be construed as authorizing ''the improvement of 'a' highway (instead of *the* highway) in Pinal and Maricopa counties extending from Casa Grande (in Pinal county) to Gila Bend (in Maricopa county),'' because, they say, the title of the act controls the legislation thereunder. It is true the legislation must fall within the terms of the title and be germane thereto. The title's province is to name the subject, but the treatment of the subject is left to the context of the bill. The subject as it appears in the title is more or less abstract, while

the legislation thereon is specific and concrete, and, of course, controlling.

The complaint alleged that at the time of the passage of chapter 101 there existed a highway starting at Casa Grande, in Pinal county, and running to Gila Bend, in Maricopa county; that said highway had been extensively and heavily traveled and used, and universally recognized as a highway for many years prior thereto; that Pinal and Maricopa counties had recognized and improved each its portion as a county highway. We think, in view of the language of the legislative act and the court's finding, quoted above, the contention of the defendants, to the effect that they could exercise their discretion as to the location of the highway, is baseless.

Finally, it is contended that the legislature in the Highway Code has empowered the highway commission to locate the Casa Grande-Gila Bend highway along a route, between the termini named, selected by the commission and its engineer, even though it be an entirely different route than the legislative one, and to spend for such changed improvement the $150,000 appropriated by the act. This proposition requires a somewhat extended examination of the Highway Code's different provisions.

As heretofore indicated, the Highway Code was intended by the legislature to be a complete treatise on the subject of the state's highways. It was intended to supplement the scattered and fragmentary legislation concerning the location, improvement and construction of public highways, found in the Revised Statutes of 1913 and the different Session Laws up to the date of its enactment. It especially intended that the commission it created and the engineer appointed by the commission should take the place and perform the duties theretofore devolving upon the state engineer, board of directors of state institutions, or any other board, commission, office or

agency of the state in the administration, control or operation of the state highways, for all such were abolished by section 3, chapter 7, of the Highway Code.

It is said, because chapter 101 placed the power to expend the appropriation therein made in the hands of the state engineer, and such office was abolished by the Highway Code, no one was left to make the improvement or to spend the money appropriated, and that therefore the act must fail. We think, however, the contingency suggested was provided for by section 4 of chapter 7 of the Highway Code; wherein it is said the abolished offices, boards, commissions, etc., "shall continue to operate and function as by law now provided" until the state engineer is appointed and qualified as provided therein. This would indicate that the new officers should take up the work where the old left off, and finish any undertaking theretofore authorized by law, whether work had begun thereon or not.

Section 11 of chapter 2 of the Highway Code expressly states that the commission therein created "shall have power, and it shall be its duty: (a) To take over in the manner, and to the extent provided in this act, the highway work in progress at the time this act shall take effect." So we conclude that chapter 101, although bereft of the particular officers and boards originally intended to carry out its provisions, is not without officers to execute the legislative will as therein expressed. It is clear to our minds the legislature intended the organization provided for in the Highway Code should not only take up and complete the work required by chapter 101, but all other work in like situation. The power to do so is directly conferred on the commission by section 1, chapter 2, of the Highway Code. By that section the commission is declared to be a department of the state government, "with the peculiar and express

function of administering, *in the manner provided by law,* all matters and affairs, directly affecting, concerning or relating to the highways of the state." (Italics ours.) No more definite conference of power could be made. There can be no escape by the commission from the performance of the duty thus enjoined.

Since we have seen the duty to carry out the provisions of chapter 101 was transferred by the Highway Code to the commission and its engineer, the money appropriated therefor was likewise by the Highway Code directed to be, as collected, placed to the credit of the highway fund. Section 6 of chapter 4 of the Highway Code enumerates the items that go to make up the state highway fund, the last being:

"(h) All moneys to come into the custody of whatsoever officer or agent of the state of Arizona, subsequently to the date on which this act shall take effect, . . . derived from whatsoever source and to be used for the construction, improvement or maintenance of state highways or bridges of the state of Arizona."

Chapter 101 took effect ninety days after its approval, or on July 21st, 1927. The Highway Code, being an emergency measure, took effect on the date of its approval, or August 11th, 1927. The collection of taxes to cover the appropriation of $150,000 made by chapter 101 was therefore after the Highway Code became a law, and under the terms of subdivision (h), section 6, *supra,* such tax should be paid into the highway fund, to be used for the specific purpose for which it was appropriated by chapter 101. It could not be used by the highway commission for the construction or improvement of the state's highways generally, because it was not contained in the budget of expenditures made or to be made by that body. The Highway Code, in section 8 et seq. of chapter 4, provides for such budget, and makes it the duty of

the tax commission to make a tax levy covering such budget, and prohibits the highway commission from expending any money except in accordance with its estimates. The $150,000 can be used only for the purpose for which it was appropriated by chapter 101, until and unless the legislature should re-appropriate it.

It is strange the legislature should specifically repeal chapters of the 1913 Code, and acts of the different sessions of the legislature up to the eighth, concerning the public highways of the state, and leave chapter 101 unmentioned, if it did not intend thereby that the provisions of chapter 101 should be respected. Its omission from the repealing clause of the Highway Code (section 2, chapter 7) can hardly be said to be accidental or inadvertent.

The rule is that a later act, general in its terms, will not be construed as repealing a prior act treating in a special way something within the purview of the general act. In other words, a special or particular statute is not repealed by a general statute, unless the intent to repeal is manifest. *Hemmer* v. *United States,* (C. C. A.) 204 Fed. 898; *Peairs* v. *Chambers,* 28 Cal. App. 584, 153 Pac. 410; *Reed Orchard Co.* v. *Superior Court,* 19 Cal. App. 648, 128 Pac. 9, 18; *State* v. *Peter,* 101 Minn. 462, 112 N. W. 866; *Folk* v. *City of St. Louis,* 250 Mo. 116, 157 S. W. 71.

It should also be borne in mind that "repeals by implication are not favored, and will not be indulged, if there is any other reasonable construction." 25 R. C. L. 918, sec. 169. See, also, *City of Tombstone* v. *Macia,* 30 Ariz. 218, 46 A. L. R. 828, 245 Pac. 677. Another rule is "that different statutes bearing upon the same subject matter should be so construed, if possible, as to give effect to all." *Gideon* v. *St. Charles,* 16 Ariz. 435, 146 Pac. 925, 927.

Ordinarily what we have said would dispose of the case and require the defendants to proceed with the improvement. Defendants suggest the futility of building the road as provided in chapter 101, because, they say, if it were built, they could immediately abandon it. They predicate this proposition upon sections 20 and 21, chapter 2, of the Highway Code. Section 20 provides that the highway system of the state shall consist, in the first instance, of the highways theretofore constituting or declared to be state highways, under authority of law, but that the commission has full power to abandon or change any part of the same or add thereto. Section 21 limits the power and right of the commission to the improving and maintaining of such parts of the system mentioned in section 20 as they shall designate and accept as highways. It further provides that "no highway which has not been designated as provided in this act as a state route shall become a state highway, nor shall any portion of a state route become a state highway until, by a proper resolution, it shall have been specifically designated and accepted by the commission as a state highway, and ordered constructed and improved."

It is obvious the legislature intended to commit to the highway commission the power and duty of locating the main arteries of the state, and to that end endowed them with the power to abandon, change or add to any of the highways theretofore existing. That these highways might be wisely and skilfully located, so as to tap the different communities of the state and afford facilities for the greatest number of our citizens, and also that such roads might be upon the most available routes for permanence and ease of travel, the commission was furnished with ample means and skilled engineers of their own choice. In other words, the object was to commit the selection of routes and the building of roads to engineering

skill, supervised by an impartial commission, rather than the haphazard policy pursued theretofore through promiscuous legislation.

In view of this obvious situation, should the defendants be required to proceed to improve the Casa Grande-Gila Bend highway along the route designated in chapter 101? It must be conceded that they could, under the statute, abandon it, even after constructing it under the order of the court. If that is true, it would appear that the legislature intended to repose in the commission a rather broad discretion in the selection of the routes to make up the state's system of highways—a discretion the exercise of which, unless clearly shown to be arbitrary or capricious, the court would not review or disturb. It would seem unreasonable, if not absurd, to say the commission could exercise its discretion of abandoning the legislative route after the improvement was made at large expense, but could not exercise its discretion to abandon it before, and save the state such expense.

We therefore conclude, from the broad powers conferred on the commission by the Highway Code, that it must have been intended that, in the selection of the routes to make up the state's highway system, such commission could abandon or change any part thereof "heretofore constituting or declared to be state highways," whether such abandoned portion had been actually constructed or not.

We are of the opinion that the court should not interfere with the commission's discretion, and therefore affirm that part of the judgment refusing a mandatory injunction to require the commission to proceed to make the improvement along the legislative route. We think, however, it was error for the court to refuse to enjoin the commission from making the improvement along the route selected by it, using therefor the $150,000 appropriation, and that part of

the judgment is reversed, with directions that a permanent injunction be entered prohibiting the commission from so proceeding.

Let the plaintiff have judgment for his costs.

LOCKWOOD, C. J., and McALISTER, J., concur.