215 P.2d 235

ARIZONA TAX COMMISSION et al. v. DAIRY & CONSUMERS CO-OPERATIVE ASS'N.

No. 5237.

Supreme Court of Arizona.

Feb. 27, 1950.

Fred O. Wilson and Edward Jacobson Asst. Attorneys General, of Phoenix, attorneys for appellants.

Fred V. Moore, of Phoenix, attorney for appellee.

Jennings, Strouss, Salmon & Trask, J. A. Riggins, Jr., Henry S. Stevens, Rex

10

H. Moore, of Phoenix, attorneys amicus curiae.

Robert & Price, of Phoenix, attorneys amicus curiae.

PHELPS, Justice.

On November 12, 1948, the State Tax Commission passed a resolution to the effect that "dairies processing milk, whether purchased or produced, when selling for resale, shall be liable for a processing tax of one-fourth per cent. When the milk is sold to ultimate consumers, such sales are taxable as retail sales, and subject to a tax of 2%." This resolution was adopted pursuant to the provisions of sections 73-1303(a) (1) and 73-1306, A.C.A.1939, being a part of the Excise Revenue Act of 1935.

Since the enactment of this law the commission has at all times collected, and still does collect, these taxes without protest, upon milk and milk products processed and sold by dairies which is not produced by their own herds.

The adoption of the above resolution in November, 1948, constituted the first step taken by it at any time to collect a sales tax on milk and milk products sold by dairies where the milk was produced from herds owned by the processing and selling dairies.

The Dairy and Consumers Cooperative Association, a corporation, appellee, hereinafter called plaintiff, forthwith paid the tax levied against it under protest and demanded a hearing before the commission which was granted. Shortly thereafter a hearing was held and the commission being fully advised in the premises, thereafter unanimously voted to make the added levy.

The plaintiff in due time instituted an action in the Superior Court of Maricopa County against the commission asking for a return of the taxes paid and for a declaratory judgment declaring its rights under the provisions of sections 49-1301 and 49-1302 and sections 73-1303(a) (1) and 73-1306 A.C.A.1939.

The commission filed with the court a motion to dismiss plaintiff's complaint upon the ground that it failed to set up a claim upon which relief could be granted. The court, after hearing arguments of counsel and taking the matter under advisement denied the motion. The commission elected to stand on the motion and judgment was entered for plaintiff for the return of taxes paid by it under protest and declaring it to be not liable under the law for the payment of any taxes under the provisions of the Excise Revenue Act of which sections 73-1303(a) (1) and 73-1306, supra, form a part.

The commission appeals to this court and presents two primary questions for our consideration:

1. Is the language of sections 49-1301 and 49-1302, supra, broad enough to

exempt agricultural products from the operation of an Excise Tax levied by the state or is it intended merely to restrict municipalities in imposing licenses and franchise tax burdens on agricultural products?

2. Are sections 49-1301 and 49-1302, supra, repealed by implication by the Excise Revenue Act of 1935 and particularly by sections 73-1303(a) (1) and 73-1306? In order that we may better understand the questions presented we incorporate herein a rescript of the sections above mentioned, to wit:

"49-1301. *Right to sell not to be restricted—Terms defined.—The producers of food products on agricultural lands, farms and gardens in this state, shall never under any pretext be denied or restricted in the right to sell and dispose of the same, except in the manner and to the extent herein provided,* and subject to inspection by lawful authority, so long as such inspection is uniform as to the same product, and without cost to the producer thereof. *'Producer,' within the meaning hereof shall include the owners, proprietors or tenants of the agricultural lands, orchards, farms and gardens, whereon or whereby such food products are grown, raised, or prepared for market; 'food products,' shall include every product of the soil in its natural or manufactured state, and all swine, fowls, eggs and milk, and all products arising therefrom. The right to sell and dispose of such products shall extend* to the producer in person, members of his family, his agents, and all persons in his service, as long as such products are sold or disposed of on his behalf and for his benefit." (Emphasis supplied.)

"49-1302. *No license tax or penalty can be imposed on a producer.—No tax, license, or other burden or fee shall be imposed or levied upon, demanded or collected from any producer because of any sale of any such products;* nor shall any penalty or punishment be imposed upon him on account of any such sale, except a penalty for violation of laws regarding inspection; nor shall any municipal ordinance, which in any manner seeks to impose or subject him to any such tax, fee or penalty, have any force or effect, save and except that all such products shall, in common with similar products offered for sale by persons who are not the producers thereof, be subject to inspection; but no municipal ordinance providing for such inspection shall be valid unless it applies in the same manner and on the same terms, to others offering similar products for sale." (Emphasis supplied.) and pertinent portions of sections:

"73-1303. *Imposition of the tax.*—From and after the effective date of this act, there is hereby levied and shall be collected by the tax commission for the purpose of raising public money to be used in liquidating the outstanding obligations of the state and county governments, to aid in defraying the necessary and ordinary ex-

penses of the state and the counties, to reduce or eliminate the annual tax levy on property for state and county purposes, and to reduce the levy on property for public school education to the extent hereinafter provided, annual privilege taxes measured by the amount or volume of business done by the persons on account of their business activities and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, in accordance with the following schedule:

"(a) At an amount equal to one-fourth of one per cent of *the gross proceeds of sales or gross income* from the business upon every person engaged or continuing within this state in the following businesses:

"1. Manufacturing, baling, crating, boxing, barrelling, canning, *bottling,* sacking, preserving, *processing, or otherwise preparing for sale, profit* or commercial use, *agricultural and horticultural products,* including livestock prepared for sale, or commercial use, or any product or products, article or articles, substance or substances, commodity or commodities not classified in paragraph 1, subsection (c) or in subsection (g). (Emphasis supplied.)

\* \* \* \* \* \*

"73-1306. *Producers selling at retail.—* Any person engaging in any business classified in subsection (a), paragraph 1, or in subsection (g), who sells the products of such business at retail in this state shall be required to make return of the gross proceeds of such sales and to pay the tax at the rate imposed by subsection (d), paragraph 1."

Sections 49-1301 and 49-1302 supra, were enacted by the legislature in 1917. At that time for instance the Roosevelt Dam had only recently been constructed through the aid of the Federal Government at a heavy cost to the land owners within the Salt River Valley project who had obligated themselves to repay the entire cost of construction to the Government within a specified period. The construction of the Dam tended to stabilize agriculture in Arizona which theretofore had been fraught with considerable instability because of the uncertainty of the water supply available. Later numerous other irrigation projects were completed and additional acreage brought under cultivation.

The legislature at that time recognized agriculture as a basic industry of the state. It undoubtedly felt that legislative recognition of its importance to the economy of the state would further tend to stabilize it and thus effect the development of arid land in the Valley and elsewhere which would greatly increase the productive wealth of the state and form the basis of additional ad valorem taxes.

We must presume that the members of the 1917 legislature knew the constitutional limitations of that body and that it could not restrict future legisla-

tures in the exercise of their legislative functions. Therefore the circumstances then existing and the language employed by it in enacting sections 49-1301 and 49-1302 compel the conclusion that the legislature intended such law as a declaration of policy of the state toward agricultural pursuits and intended to exempt producers of agricultural products as defined therein from taxes of any and all kinds as a result of any sale thereof. The exemption, of course, was intended to exist only until modified or repealed by a subsequent legislature. We find nothing either in the letter or context of the exemption statute justifying the interpretation claimed by the commission that the law was intended to apply only to a franchise or excise tax of a municipality. No reference is made to municipal ordinances in the first portion of section 49-1302 prohibiting the levy of the tax, license or other burden or fee upon producers. The injunction is all-inclusive and would have effectively prohibited the levying of any such tax by a municipality without a specific reference to municipal ordinances later in the section. We suspect that the specific reference to municipal ordinances was prompted by the fact that the Arizona constitution, section 6, article 9 thereof, provides that: " * * * For all corporate purposes, all municipal corporations may be vested (by law) with authority to assess and collect taxes." With this in mind it was perhaps considered advisable to specifically enjoin municipalities from levying such a tax to prevent any possible contention to the contrary in the future.

It is argued that at the time this law was passed sales taxes were unknown, that the legislature in 1917 could not have anticipated the sales tax law passed in this state in 1935. Were we to assume as a premise that no member of the legislative body enacting this law had even a dim concept of the sales tax law as enacted approximately 20 years later, it does not follow that there was any member who did not know the meaning of the word "sales" or "tax" as used in this Act. In simple, clear and concise language the law prohibits the tax on sales by producers of agricultural products. That portion of the Act is unambiguous and requires no judicial construction. Whether the law applies to plaintiff is another question. Section 49-1301 defines a "producer" within the meaning of the Act to " * * * include the owners, proprietors or tenants of the agricultural lands, orchards, farms and gardens, whereon or whereby such food products are grown, raised, or prepared for market; * * *" and "food products" are defined to " * * * include every product of the soil in its natural or manufactured state, and all swine, fowls, eggs and milk, and all products arising therefrom. * * *"

The last portion of the section provides that: " * * * The right to sell and dispose of such products shall extend to the

14

producer in person, members of his family, his agents, and all persons in his service, as long as such products are sold or disposed of on his behalf and for his benefit."

The complaint alleges that the plaintiff is a cooperative organization organized under the Cooperative Marketing Act of Arizona, that it is non-profit in character and at all times, acting in its corporate capacity as agent of its members, all of whom are dairymen. This must be taken as true and must be construed to mean that plaintiff processed, bottled and sold all of its products as the agent and for the benefit of its members who are all dairymen.

We held in the case of State Tax Commission of Arizona v. Martin, 57 Ariz. 283, 113 P.2d 640, that the United Producers and Consumers Cooperative, a corporation organized under the Cooperative Marketing Act above referred to, was a distinct legal entity and that in the sale of merchandise to its members was the agent of one C. M. Martin, wholesaler, in making such sales; that the title to said merchandise at all times resided in Martin and at no time rested in the Cooperative, and in O'Neil v. United Producers and Consumers Co-op., 57 Ariz. 295, 113 P.2d 645, we stated that the cooperative was the agent of its members and as such acted for their gain, benefit and advantage. Applying that rule to the facts in the instant case the plaintiff here is a legal entity in processing, bottling and selling the dairy products of its members. It is acting as the agent of its members and for their gain, benefit or advantage. Title to the dairy products at all times resides in the members of the cooperative and passes directly from such members to the purchaser. This being true such products are not subject to a sales tax unless sections 49-1301 and 49-1302, supra, or portions thereof have been repealed by implication by the pertinent provisions of the Excise Revenue Act of 1935 hereinabove set forth.

Before entering upon a discussion of whether the exemption statute here involved or a portion thereof has been repealed by implication, let us observe that there can be no estoppel involved against a sovereign state. The failure of the tax commission to attempt to collect taxes now sought to be collected from plaintiff for a period of years constitutes no defense to their collection; Duhame v. State Tax Commission, 65 Ariz. 268, 179 P.2d 252, 171 A.L.R. 684, nor is there any merit to the contention of plaintiff that the Excise Revenue Act, supra, if intended as a repeal of sections 49-1301 and 49-1302 violates the provisions of section 14, article 4, part 2 of our Constitution prohibiting the revision or amendment of a law or section thereof by mere reference to the title of such act. This court said in substance in the case of Mosher v. City of Phoenix, 39 Ariz. 470, 7 P.2d 622, that if an act independent, distinct and complete in itself incidentally repeals a part of an earlier

act in conflict therewith such repeal is not affected by section 14, supra. In fact all the authorities are to the effect that an act complete in itself does not violate a constitutional provision such as ours even though it does in reality repeal a prior statute in conflict therewith. Cooley, Constitutional Limitations, page 152; Pitcher v. State, 41 Ariz. 20, 15 P.2d 245.

█ Neither is there any merit to plaintiff's contention that the inclusion by the publishing company of sections 49-1301 and 49-1302 in the 1939 Arizona Code Annotated indicated that said Act had not been repealed or that it had the effect of vitalizing said Act.

No legislative action was taken concerning the 1939 Code after its recompilation and publication. The only legislation relating thereto was an act approved March 21, 1939, authorizing the Supreme Court to enter into a contract for its recompilation, annotation, indexing and publication in accordance with the provisions of the Act. The Act provided that upon the authentication thereof by the secretary of state such recompiled code and supplements thereof should be enforced, received, recognized, referred to and used as the official compilation of the statutory law of Arizona.

█ No authority was given to the publisher charged with the duty of recompilation to omit any of the laws of the state, to add any law thereto or to determine whether any statute had or had not been repealed by subsequent legislation. No such authority could have been given by the legislature. Any attempt to do so would have constituted an unlawful delegation of legislative authority.

Having disposed of the secondary issues raised, we will now proceed to a determination of the question as to whether sections 49-1301 and 49-1302, supra, or portions thereof were repealed by implication by the provisions of sections 73-1303(a)(1) and 73-1306, supra.

We recognize that this decision will materially affect the economy of the state in that the tax imposed must either be borne by the producer or consumer, therefore in order to better present the question to be determined we believe it advantageous even at the expense of brevity to parallel the pertinent portions of the statutes involved to the end that the irreconcilable conflict in the two laws may be more readily perceived, and the responsibility may be shown to rest where it belongs:

Section 49-1301 provides:

"The producers of food products on agricultural lands, farms and gardens in this state, shall never under any pretext be denied or restricted in the right to sell and dispose of the same, * * *.

" 'Producer', within the meaning hereof shall *include the owners, proprietors or tenants of the agricultural lands, or-*

chards, farms and gardens, whereon or whereby such food products are grown, raised, or prepared for market; * * *

"'food products,' shall include every product of the soil in its natural or manufactured state, and all swine, fowls, eggs and milk, and all products arising therefrom.

"The right to sell and dispose of such products shall extend to the producer in person, members of his family, his agents, and all persons in his service, as long as such products are sold or disposed of on his behalf and for his benefit." (Emphasis supplied.)

Section 49-1302 provides:

"No tax, license, or other burden or fee shall be imposed or levied upon, demanded or collected from any producer because of any sale of any such products; * * *." (Emphasis supplied.)

Section 73-1303 provides:

"From and after the effective date of this act, there is hereby levied and shall be collected by the tax commission for the purpose of raising public money * * * annual privilege taxes measured by the amount or volume of business done by the persons on account of their business activities and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, in accordance with the following schedule:

"(a) At an amount equal to one-fourth of one per cent of the gross proceeds of sales or gross income from the business upon every person engaged or continuing within this state in the following businesses:

"1. * * * bottling, * * * processing, or otherwise preparing for sale, profit or commercial use, agricultural and horticultural products, * * *. (Emphasis supplied.)

Section 73-1306 provides:

"Any person engaging in any business classified in subsection (a), paragraph 1, * * * who sells the products of such business at retail in this state shall be required to make return of the gross proceeds of such sales and to pay the tax at the rate imposed by subsection (d), paragraph 1." Subsection (d), paragraph 1, provides for a tax on such sales at the rate of 2%.

---

Section 49-1301 defines milk and all products arising therefrom as agricultural food products and section 49-1302 exempts such products from a sales tax. This exemption extends to the agents and all persons in the service of the producer as long as such products are sold or disposed of on his behalf and for his benefit. This includes plaintiff.

■ Under the provisions of sections 73-1303(a) (1) and 73-1306, supra, milk, if bottled, processed or otherwise pre-

pared for sale by any person engaged in the business of "bottling, * * * processing, or otherwise preparing for sale," is subjected to the imposition of a tax of one-fourth of one per cent and if sold at retail by such person, to a tax of two per cent upon the gross proceeds of sale. Person is defined in the act to include associations, copartnerships and corporations. This includes plaintiff.

Business is defined in section 73-1302, to "* * * include all activities or acts, personal or corporate, engaged in or caused to be engaged in with the object of gain, benefit or advantage either direct or indirect, but not casual activities or sales."

It has not been suggested and it cannot be seriously contended that plaintiff is not an independent legal entity "engaged in the business of processing, * * * bottling * * * or otherwise preparing for sale" milk or milk products.

The language imposing the above tax, again, is clear, concise and unambiguous and therefore not subject to any refined judicial construction. It speaks for itself. After reading the tax statute, can there be any doubt in the mind of any person that the legislature intended to and did impose a processing tax of one-fourth of one per cent on persons engaged in the business of bottling, processing or otherwise preparing for sale milk or milk products or imposing in lieu thereof a sales tax of two per cent thereon when such person sells said product at retail? Can

there be any doubt that milk and products arising therefrom are expressly exempted from every kind of a tax because of a sale thereof under the provisions of sections 49-1301 and 49-1302, supra? Is not the language used in the latter statute, 73-1303(a) (1) and 73-1306, supra, sufficiently clear and concise to manifest an intent on the part of the legislature to repeal any previous law in conflict with it? What more explicit language could the legislature have employed to manifest an intent to impose the tax, which it did levy therein, upon persons engaged in such business? How could it more positively have manifested its intent to impose a two per cent sales tax thereon when such persons proceed to sell said products at retail? Can the language imposing the tax be reconciled with the language used in the exemption statute prohibiting a tax of any kind upon the producer, his agents or any person in his service because of the sale of agricultural products as long as such products are sold on behalf of or for the benefit of the producer? The correct answer to each of these questions seems obvious to us.

True the legislature could have added to the latter statute "that all acts or parts of acts in conflict herewith are hereby repealed" but it was not necessary that it do so. It is clear that in enacting the Excise Revenue Act of 1935 of which sections 73-1303 and 73-1306 are a part the legislature did not intend to recede

18

from its declaration of policy toward agricultural pursuits as pronounced in sections 49-1301 and 49-1302, supra, except insofar as it applies to persons engaged in the business of processing and selling agricultural products at wholesale or retail. With this exception these sections are still in full force and effect.

Sections 49-1301 and 49-1302, supra, constitute an exemptions statute of agricultural products and is unquestionably a special statute. While sections 73-1303 and 73-1306, supra, constitute a part of the Excise Revenue Act of Arizona of 1935 which is undeniably a general statute.

We have repeatedly held that a special or particular statute is not repealed by a general statute unless the intent to repeal is manifested and that repeals by implication are not favored and will not be indulged if there is any other reasonable construction. Rowland v. McBride, 35 Ariz. 511, 281 P. 207; Hudson v. Brooks, 62 Ariz. 505, 158 P.2d 661.

It is not necessary, however, to hold as the learned trial judge did, that the subsequent general statute, in order to effect a repeal of a special statute shall amount to a substitution of the special statute. It is enough, as pointed out in the above cases, if the conflict is of such a nature that the two cannot stand together, i. e., cannot be reconciled.

We have fully considered the rule of statutory construction that statutes imposing taxes will be most strongly construed against the government and in favor of the taxpayer or citizen. Alvord et al. v. State Tax Commission, Ariz., 213 P.2d 363; Rodenbough, Ex'r, v. United States, 3 Cir., 25 F.2d 13, 57 A.L.R. 1091; and that any doubts as to their meaning are to be resolved against the tax authority and in favor of the taxpayer. General Petroleum Corporation of California v. Smith et al., 62 Ariz. 239, 157 P.2d 356, 158 A.L.R. 364. Notwithstanding this, however, we are constrained to hold that the two statutes are in such deadly conflict that they cannot possibly be reconciled and that the former enactment must give way to the later law.

The legislative branch of government is alone vested with the power to declare policies relating to the economies of the state and to impose or withhold excise taxes upon businesses manufacturing, processing or selling tangible personal property including agricultural products. It has thought proper to modify its earlier declaration of policy toward agricultural products as it applies to persons engaged in the business of bottling, processing or preparing for sale, agricultural and horticultural products including milk and all products arising therefrom. And by the provisions of sections 73-1303(a) (1) and 73-1306, supra, has levied a tax on persons engaged in such business. The legislative intent is clear. The court's duty is mandatory. It has no alternative in the matter.

We therefore hold that the portion of section 73-1303(a) (1), supra, imposing

a tax of one-fourth of one per cent of the gross proceeds of sale or gross income from the business upon every person engaged within the state in the business of "bottling * * * processing, or otherwise preparing for sale, profit or commercial use, agricultural and horticultural products" and section 73-1306, supra, imposing a tax of two per cent of the gross proceeds of sale upon such business when it sells said agricultural and horticultural products at retail in the state, by implication, repeals that portion of sections 49-1301 and 49-1302, supra, in conflict therewith as above pointed out and that plaintiff is subject to the payment of said tax under the provisions of sections 73-1303(a)(1) and 73-1306, supra. We expressly hold, however, that all other portions of sections 49-1301 and 49-1302, supra, are still in full force and effect and that producers of agricultural and horticultural products as therein defined may continue to sell such products free from the operation of the Excise Revenue Act of 1935 except as above stated and that where the processing or preparation for sale by the producer is incidental to the growing or raising of agricultural products and does not in itself amount to a business distinct from agriculture, no sales tax may be collected.

Judgment reversed.

LA PRADE, C. J., and UDALL, STANFORD and DE CONCINI, JJ., concur.