[Civil No. 4699.   Filed March 12, 1945.]

[157 Pac. (2d) 356.]

GENERAL PETROLEUM CORPORATION OF CALIFORNIA, a Corporation, Appellant, v. J. M. SMITH, L. W. CRESS, H. O. PACE, KEMPER MARLEY and E. H. McEACHREN, as Members of and Constituting the State Highway Commission of the Arizona Highway Department; BERNARD TOUHEY, as State Highway Engineer of the Arizona Highway Department; and M. A. GOODWIN, as Vehicle Superintendent of the Motor Vehicle Division of the Arizona Highway Department, Appellees.

Messrs. Ellinwood & Ross, Mr. Norman S. Hull, and Mr. Wm. Spaid, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. A. R. Lynch, Assistant Attorney General, for Appellees.

MORGAN, J.—Plaintiff brought an action against defendants for a declaratory judgment decreeing that it was not liable for, and the defendants are not entitled to collect, a penalty of $9,395.05, plus 7% interest under Section 66-306, Arizona Code Annotated 1939 of the Motor Vehicle Fuel Tax Act. The trial court on motion of defendants dismissed the complaint on the ground that it failed to state a claim upon which relief could be granted. Judgment being entered in accordance with the order to dismiss, the plaintiff brought this appeal.

In considering the cause we must assume that all allegations of fact in the complaint are true. The facts may be summarized as follows:

Plaintiff in 1942 was, and for many years prior thereto had been, a licensed distributor of motor vehicle fuel, duly qualified under Chapter 66, Article 3, Motor Vehicle Fuel Tax Act, Arizona Code Annotated 1939. The defendants composed the membership of the commission of the Arizona Highway Department, its engineer and superintendent of the Motor Vehicle Division. Under the law plaintiff was required to make reports and to pay to the vehicle superintendent on or before the 15th day of each month a license tax of five cents for each gallon of gasoline,

less certain deductions, for motor vehicle fuel imported into the state during the preceding month. It had regularly complied with the provisions of the act in this respect. It became obligated to pay on or before December 15, 1942, a tax of $37,580.20 for importations during the month of November. Pursuant to a long established custom acquiesced in by defendants, and in compliance with the terms of the act, it prepared the usual reports and issued its check for the amount of the tax on December 14th, and placed the reports and check in an envelope addressed to the Motor Vehicle Division, Arizona State Highway Department, Phoenix, Arizona. On the same day the envelope was deposited in the United States Post Office at Los Angeles, California, registered, with postage prepaid. In the ordinary course of mail transmission, the reports and check should have been delivered to the defendant superintendent on December 15th. Due to unforeseen conditions and causes over which plaintiff had no control, particularly the use of transportation facilities by the armed forces in furtherance of the war effort, a fire occurring on December 12th in the Post Office Terminal through which all mail going out of Los Angeles passes, and for other reasons causing mail congestion, the check was not actually received by the Motor Vehicle Division until December 16, 1942.

The superintendent accepted the check. It was duly honored and credit given for the total amount of the taxes payable as of the date of arrival, December 16th. Because of the failure of the check to arrive on the preceding day, the 15th, defendants assessed and demanded of plaintiff the statutory penalty of 25% of the tax, $9,393.05, with interest at 7% per annum thereon from December 15, 1942 until paid. Appropriate allegations appear in the complaint, such as an actual controversy exists and that a final declaratory judgment will determine and terminate such controversy, to bring the action within the terms of the Dec-

laratory Judgment Act. It is alleged that plaintiff performed every act that could reasonably be expected of it in its endeavor to comply with the provisions of the law.

■ Determination of the controversy requires consideration of the following provisions of the Motor Vehicle Fuel Tax Act as they existed in 1942:

"66–301. *Amount of tax—When payable—Distribution.*—Every distributor shall pay to the state, in addition to all other taxes provided by law, a license tax of five cents (5¢) for each gallon of motor vehicle fuel. . . . Such license tax accrued in any calendar month shall be paid on or before the fifteenth day of the next succeeding calendar month to the vehicle superintendent, . . . ."

"66–303. *Bond required of licensed distributor.*— Every distributor shall file with the vehicle superintendent a bond . . . conditioned upon the prompt filing of . . . reports and the payment . . . of . . . all motor vehicle fuel taxes . . . ."

"66–306. *Penalty for failure to report or pay taxes promptly.*—When any distributor shall fail to submit his monthly report to the vehicle superintendent by the fifteenth of the month, . . . , or when such distributor shall fail to pay the amount of taxes due this state when the same shall be payable, a penalty of twenty-five (25) per cent shall be added to the amount of the tax due, and said penalty of twenty-five (25) per cent shall immediately accrue, and thereafter said tax and penalty shall bear interest at the rate of seven (7) per cent per annum until the same is paid."

It is evident that the various provisions of the act are designed to insure prompt compliance not only with the provisions pertaining to the filing of returns, but also for the payment of the tax due. We do not construe the penalty to be intended as a punishment, or for the purpose of securing additional revenue to the state. The object of the penalty is to secure compliance.

It would seem that the imposition and exaction of the penalty, under the circumstances in this case, would in no way be effective in securing prompt compliance with the terms of the act. The facts disclose that the plaintiff made every reasonable effort to comply. The remittance was mailed at a time when it should have reached the superintendent on the due date. It was no fault of the plaintiff that it did not arrive on the 15th. The state received its tax in full; it was out nothing.

This law, like every other law of Arizona, must be considered and measured by the rule of statutory construction provided by the legislature and appearing in Section 1–101, Arizona Code Annotated 1939:

"Statutes shall be liberally construed, to effect their objects and to promote justice."

Under this rule, and the admitted facts, the imposition of the penalty would not promote justice. Under the circumstances it would be highly inequitable to charge and collect from the plaintiff this substantial penalty. No court, unless compelled to do so by rules which could not be ignored, would want to enforce the penalty. The ordinary man would say that the penalty, under the facts shown here, should not be exacted. The real question for us to determine is the legislative intent. The legislature must have had in mind its own rule of statutory construction. If this rule is to be followed we cannot say that the legislature intended there should be a penalty imposed in this case. All statutes must be construed together. *National Surety Co.* v. *Conway*, 43 Ariz. 480, 33 Pac. (2d) 276.

The Constitution of Arizona provides that all taxes must be paid in cash. The practice, however, is to pay by check. When the check is honored, even though it may not be cashed for sometime after the due date for the satisfaction of the tax, the payment relates back to the date on which the check was re-

ceived. This situation is not strictly analogous to the case we have before us. Here the check did not arrive upon the due date, but on the following day. Can the legislative intent be construed as allowing an exemption from the penalty where the remittance was actually placed in the mail at a time and under conditions where in the ordinary course it would have reached the tax receiving officer on the due date? When the remittance is received, should it relate back as payment to the date when it should have been received in the ordinary course of the mail?

We are compelled to answer the foregoing questions in the affirmative and to hold that in this case the remittance should be treated as payment of the tax as of the date when it should have arrived. If we were dealing with an ordinary tax statute we might well come to a different conclusion. The act under consideration is denominated ''Motor Vehicle Fuel Tax.'' The five cents per gallon is actually passed on to the consumer. For convenience the state has seen fit to make this a ''license tax'' and require the distributor to pay the five cents per gallon as a license fee. Notwithstanding this, it is a ''motor vehicle fuel tax'' and the distributor is in effect the agent of the state for the purpose of collecting this tax. *Texas Co.* v. *State,* 31 Ariz. 485, 254 Pac. 1060, 53 A. L. R. 258.

We agree to a certain extent with the following statement appearing in appellees' brief:

''In the case of the gasoline tax imposed by our law the taxpayer himself is the assessing agent. He prepares the report of the sales upon which the tax is levied. He alone knows the amount of the tax. He is charged with the duty of paying it to the collector and the collector is not charged with the duty of bringing proceedings of any kind to collect the tax unless a default has actually occurred;''

The distributor is for practical purposes the assessing agent. As such, and pursuant to the long estab-

lished custom mentioned in the complaint, the plaintiff in this case used the mails for the purpose of making remittances. It is scarcely conceivable that the legislature ever intended that the distributor should be penalized if, under the circumstances shown, there was a delay in the receipt of the tax by reason of conditions wholly beyond the control of the distributor and without its fault.

Penalties are not favored and penal statutes are to be strictly construed. Tax measures are, if possible, to be construed to avoid hardship or injustice. They are to be liberally interpreted in favor of the taxpayer. This does not mean that the penalty provided by the statute is not lawful. The legislature has the right to, and must, fix penalties in many cases for the enforcement of the tax laws. It does mean, however, that the tax laws must be so construed as to make their application fair and to avoid arbitrary results. In compliance with these general principles, and in view of the facts of this case, we would be justified under the authorities, if it were necessary to do so, in allowing equitable relief against the enforcement of the penalty here. The courts have frequently, in the exercise of their equitable powers, abated tax penalties under meritorious conditions. The following decisions are instances of relief afforded: *People* v. *Texas Co.,* 85 Colo. 289, 275 Pac. 896; *Litchfield* v. *Webster County,* 101 U. S. 773, 25 L. Ed. 925; *McHenry* v. *Alford,* 168 U. S. 651, 18 Sup. Ct. 242, 42 L. Ed. 614; *United States Trust Co.* v. *New Mexico,* 183 U. S. 535, 22 Sup. Ct. 172, 46 L. Ed. 315; *Cantlay & Tanzola* v. *Ingels,* 31 Cal. App. (2d) 553, 88 Pac. (2d) 141; *State* v. *Sinclair Refining Co.,* 195 La. 288, 196 So. 349. Since, in our view, the legislative intent does not require the imposition of a penalty in the present case, equitable relief will not be required.

We may add that the rule which we apply, and the conclusion reached, has the sanction of legisla-

tive construction. In 1943, the law was amended in two particulars: The date of payment was deferred to the 25th; a subsection (b) was added to Section 66–306, *supra,* providing as follows:

"If a report or remittance to cover a payment required by law to be filed with or made to the vehicle superintendent under this article 3 is transmitted through the United States mail and is not received by the vehicle superintendent until after the date upon which such report is required to be filed or such payment was required to be made, and if the envelope in which such report or remittance is enclosed bears a post office cancellation mark dated on or prior to the date upon which such report was required to be filed or such payment was required to be made, the vehicle superintendent, upon receipt thereof, shall treat the report or remittance as if it had been received on the date upon which such report was required to be filed or such payment was required to be made."

Apparently the amendment was made to avoid any hardship or injustice in the application of the law as originally enacted. The legislature must have been mindful of the fact that, in case of seasonable remittances by mail, situations might arise where a rigid compliance with the law would conflict with the rule of liberal construction to effect statutory objects and promote justice. In this respect when both sections are considered, as they must be, an ambiguity exists. In such case, the court may look to subsequent changes of the law by the legislature in support of its own view of the prior act.

In *Moore* v. *Pleasant Hasler Const. Co.,* 51 Ariz. 40, 76 Pac. (2d) 225, this court held that an amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act. The rule seems to be well established that the interpretation of a statute by the legislative department goes far to remove doubt as to the meaning of the law. The court

has the right and the duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation. 50 Am. Jur. 328, sec. 337, title "Statutes."

The judgment of the lower court is reversed and the case remanded with directions that the order dismissing the complaint be set aside, and the complaint reinstated for further proceedings in accordance with law and this opinion.

STANFORD, C. J., and LaPRADE, J., concur.