283 P.2d 1029

Thad MOORE, Warren Peterson and William E. Stanford, as members of and constituting the Arizona State Tax Commission, Appellants,

v.

Ed. E. SMOTKIN and G. W. Bromley, a partnership doing business under the name and style of American Homes Association, Appellees.

No. 5870.

Supreme Court of Arizona.

May 17, 1955.

Robert Morrison, Atty. Gen., D. Kelly Turner, Asst. Atty. Gen., for appellants.

James Elliott Dunseath, Tucson, James E. Flynn, Phoenix, for appellees.

STRUCKMEYER, Justice.

This action originated in the Superior Court of Pima County, Arizona, for the recovery of $9,311.57 paid under protest to the State Tax Commission. Judgment was entered in favor of appellees and against appellant Tax Commission, the court finding that appellees' business activities were not subject to the occupation tax imposed by the Excise Revenue Act of 1935 as amended, specifically Section 73–1303, A.C.A.1939, as follows:

> "(h) at an amount equal to one per cent of the gross proceeds or gross income from the business, upon every person engaged or continuing in the business of contracting. * *"

The appellees conducted their business essentially in the following manner, viz.: The purchase of a tract of land, its subsequent improvement as the owners by laying of streets, water, gas and electric conduits, its division into suitable lots, the construction of houses upon such lots and the sale of house and lot as an integral unit.

Before entering into a discussion of the principal question at issue, several ancillary questions presented by the parties will be disposed of summarily. First, this court has heretofore stated in unequivocal language the construction to be given to the Excise Revenue Act:

"We have here a revenue act, the construction of which to say the least, is doubtful, and consequently should be given a strict construction against the taxing power, giving due regard to the expression of the legislative intent. General Petroleum Corporation v. Smith, 62 Ariz. 239, 157 P.2d 356, 158 A.L.R. 364. Taxing statutes are not and should not be extended to embrace objects bearing the burden of taxation by a strained construction or implication. 59 C.J. Section 670, p. 1131. Matters or persons upon whom these burdens are placed should be pointed out with reasonable clarity and not left to the realm of speculation." Alvord v. State Tax Commission, 69 Ariz. 287, 213 P.2d 363, 366.

Second, while appellees seriously urge that they are speculative builders in the business of speculative building, we are not so much concerned with what label appellees use to describe their business activity, being inclined to agree with Shakespeare:

"What's in a name? That which we call a rose

By any other name would smell as sweet."

Third, we believe and the Tax Commission ultimately concedes that the decision in this case does not turn on whether the appellees are or are not licensed as contractors under the particular provisions of Section 67–803, A.C.A.1939 as amended. Even if the appellees were licensed as contractors, the question would still remain to be determined whether that particular portion of the business activities here sought to be taxed is contracting. Fourth, we do not think that this case is controlled by the decision in White v. Moore, 46 Ariz. 48, 46 P.2d 1077. Therein we held that the incidental business activity of a banking institution in the renting of office and storage space was subject to the provision of the act providing for a tax on gross income derived from rentals even though the principal business of banking was not taxable under the act. We did not say that an integrated, unitary commercial operation involving in part the doing of that which would ordinarily be taxable was subject to the act or that an

integrated, unitary business could be arbitrarily partitioned so as to tax a portion of the business covered by the act. Here the Tax Commission seeks only to tax that portion of appellees' income which it believes is derived from the construction of houses; therefore this cause can be fully adjudicated by a determination of whether that portion of appellees' business against which the tax was levied and collected is actually within the "business of contracting."

Semasiologically the words "contractor" and "contracting" are derivatives of the word "contract". A "contract" in a strict legal sense when used as a noun means an agreement or the instrument evidencing it. 17 C.J.S., Contracts, p. 289. In its full and more liberal significance it has the well defined meaning of being the expression by two or more persons of the common intention to effect their legal relations. The word "contractor" is aptly described:

> "While, in a strict sense, both parties to a contract are contractors, and in a narrow sense, a contractor is a person who contracts with another, the term has acquired a specific meaning as applied to a business, and, in a general sense, a contractor is one who enters into a contract to do special work for another, according to price, specifications, and terms agreed on." 17 C.J.S., Contracts, § 1, p. 314.

The definition of a "contractor" in its general sense, applied to a business as set forth above, seems to be universally accepted under a variety of circumstances ranging through the fields of mechanic's liens, workmen's compensation, etc. It has the approval of this court. Barker v. General Petroleum Corp., 72 Ariz. 187, 232 P.2d 390; Alexander v. Alexander, 51 Ariz. 269, 76 P.2d 223.

Our examination of the authorities leads us to the conclusion that there is a thread common to all definitions of "contract", "contracting" and "contractor" which can best be stated to be that it takes at least two parties to establish a contractual relationship; that one person must agree with another. To be a contractor one person must have entered into an agreement with another to perform work for the other. We believe that this compels the conclusion that one cannot be in the business of contracting without first having entered into a contractual relation with another by which the contractor undertakes to erect buildings or in some manner to improve property or construct works. Our conclusion is the same as that reached in Mississippi under an almost identical statute:

> "One who contracts to do a specified work of building, erecting, constructing or repairing a structure, or drilling an oil well for another enters on the performance of the work under

an agreement that he shall receive for his service what he concedes to be a fair remuneration for the service to be performed. It is in that sense that one engages or continues 'in the business of contracting for a fixed price, commission, fee or wage, to build, erect, construct, repair, * * * drill'. One does not contract with himself or with others to build, erect, construct or repair his own house or to drill his own oil well for a fixed price, commission, fee or wage. * *" Stone v. W. G. Nelson Exploration Co., 211 Miss. 199, 51 So.2d 279, 282.

The Tax Commission argues that an agreement to build a house of a certain specification for another is within the meaning of the term "business of contracting." If such were the case here, we would be inclined to agree. In some instances appellees did enter into sales contracts prior to the completion of the houses. We point out, however, that the sales agreement, although labeled "Sales Contract", did not contain any promise to build a house or any reference to a building of any kind. It was simply a promise to convey a given piece of real property, a lot, for a stated price on a particular day in the future. Moreover, the transaction was subject to the condition that it be accepted by the prospective purchaser. This was at most a tentative agreement to purchase which might or might not be consummated. A similar situation was presented in State v. Tabasso Homes, Inc., 3 Terry 110, Del., 28 A.2d 248, 255, wherein Tabasso Homes, Inc., was indicted under a criminal statute as a contractor who paid out moneys prior to paying in full the claims of labor and materials. It was held that:

"* * * No term of the statute is appropriate to the defendant unless it be that of 'contractor.' Such contractor, under the statute, must receive money as contractor for the building operation. The term as used in the statute, we think, means one who enters into a contract, directly or indirectly with the owner of real estate for the construction, alteration or repair of a building thereon. The Warringtons were not the owners of the land, but had merely an agreement to purchase, which might or might not be consummated. The defendant was the owner, and, so far as disclosed, has always continued so to be.

\* \* \* \* \* \*

"Precisely the same state of facts as here involved was presented in Hannan v. Handy, 104 Conn. 653, 134 A. 71, 47 A.L.R. 259. There, under an almost identical situation as the present, the vendor under contract to erect a building and convey the completed structure, together with the lot, was held not to be a contractor, so that those working on the building or furnishing materials therefor, by contract with the vendor, did so with him as owner and not as a contractor.

See, also, Evans-Lee Co. v. Knudtson, 190 Wis. 207, 208 N.W. 872.

\* \* \* \* \* \*

"Tabasso Homes, insofar as the Warringtons were concerned, was a 'contractor' in the limited sense that a contract of a nature existed between them. It was not a 'contractor' in the sense that such word was used in the instant statute. There the word clearly has the meaning that it bears in the Mechanics Lien Statute, viz., one who contracts for the erection, alteration or repair of a building. The contract between the Warringtons and the defendant was not solely a contract for the erection of a house, but an agreement to buy a designated lot of land which should contain a house thereon, built according to agreed plans, and for an integral and indivisible price for lot and building.

"We think that under the disclosed facts Tabasso Homes must be considered as owner, and not as a contractor, and that no language of a cited statute is applicable. \*. \* \*"

We believe that the meaning of the term "business of contracting" is so well established and understood that it cannot be said to encompass owners who construct buildings or other improvements on their own property.

Affirmed.

LA PRADE, C. J., and UDALL, WINDES, and PHELPS, JJ., concurring.