326 P.2d 841

**The CITY OF PHOENIX, a municipal corporation, and B. W. Bear, City Assessor, Appellants,**

v.

**The BORDEN ĆOMPANY, a corporation, Appellee.**

**No. 6358.**

Supreme Court of Arizona.

June 11, 1958.

Rehearing Denied July 8, 1958.

William ℃. Eliot, City Atty., George Mariscal, John F. Mills and Dale E. Marenda, Asst. City Attys., Phoenix, for appellants.

Evans, Kitchel & Jenckes and Jos. S. Jenckes, Jr., Phoenix, for appellee.

JOHNSON, Justice.

The Borden Company, appellee (plaintiff below), brought this action against the City of Phoenix, appellant (defendant below), to determine whether certain of appellee's sales should be included in the measure of

the tax which the city, by its Ordinance No. G–93, imposed on persons engaging in business within the city. A declaratory judgment was issued declaring that the sale and delivery of appellee's products outside the city limits of Phoenix was not subject to the privilege tax imposed by the ordinance, and that appellee was not liable to the City of Phoenix for such a tax on any sales previously made from its vehicles, trucks or stores outside the city limits direct to purchasers. This is an appeal by the City of Phoenix from such declaratory judgment.

The City of Phoenix by its Ordinance No. G–93 has levied a tax in the following language:

"Section 2. Imposition of the Tax. * * * there is hereby levied * * * the privilege taxes measured by the amount or volume of business done by the persons on account of their business activities and the amounts to be determined by the application of rates against values, gross proceeds of sale, or gross income, as the case may be, in accordance with the following schedule:

\* \* \* \* \* \*

"(c) At an amount equal to one-half of one per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within the City of Phoenix in the following businesses:

"1. Selling any tangible personal property whatsoever at retail, except bonds and stocks."

The Borden Company maintains a processing plant within the corporate limits of the defendant City of Phoenix. It receives milk from dairies and this and its by-products are processed and bottled. The plaintiff also makes its own orange drink and cream. These products, plus other finished products, orange juice, cottage cheese, butter, eggs, goat milk and ready-whip are sold by plaintiff. It also maintains its administrative and sales force at its plant located within the corporate limits of the City of Phoenix.

The portion of the Privilege License Tax Ordinance involved herein only applies to retail sales, and the only sales in issue are the retail sales made by the plaintiff outside the corporate limits. The plaintiff accomplishes its retail selling by employees who drive trucks on retail routes. Some of these routes are exclusively within the city, others are exclusively beyond the corporate limits, and then there are those that weave in and out of the corporate limits. The trucks are refrigerated delivery wagons; whatever merchandise is not sold after the daily delivery is left on the truck and the refrigeration unit is then connected. The empties are removed and then the following day these trucks are loaded for another day's operation. The route men have what

is called a "route book" which contains the name of the customer, his address, and the running balance of the customer's account. Statements are prepared and left by the driver at the customer's address at a pre-designated period. Any collections these route men make are credited to the customer and turned into the office at the plant. The office in turn gives credit to the driver for the monies turned in. On occasion checks are mailed by the customer to plaintiff's office and these are turned over to the route men so that they may post the credit to the customer. Plaintiff deposits these checks, plus any monies collected by the route men, in the bank.

At the end of each month the route man has to balance his books with the office. Each day the route man is charged with merchandise loaded on his truck; at the end of the day he turns in any money collected, which in turn is deducted from that charge. The difference between the charge to the route man and his credit for monies received must be the balance charged to customers on his route book. These route books are then microfilmed and the route book becomes the statement to the customer. Microfilms are kept in the office. The customer's address is reflected on the microfilm.

The plaintiff, in computing its sales tax, makes its returns and pays only on those sales made within the city limits and excludes those sales made beyond the city limits. Every third month plaintiff's office goes through the route books to determine which sales were made within the corporate limits and what ones were made beyond the corporate limits.

The evidence established that plaintiff's products bottled and processed in its Phoenix plant were sold at retail both within and without the corporate limits.

In the case of City of Phoenix v. Arizona Sash, Door & Glass Co., 80 Ariz. 100, 293 P.2d 438, we held Phoenix Ordinance No. 5121 constitutional, which is verbatim, with certain amendments, to the new privilege license tax Ordinance No. G–93 involved herein. In the foregoing case we readopted the language used in Arizona State Tax Commission v. Ensign, 75 Ariz. 220, 254 P. 2d 1029, and stated that the tax imposed was not a sales tax as such but it was a tax upon the privilege of engaging in business. Plaintiff is clearly engaged in business in the City of Phoenix, and is liable for the tax measured by its retail sales.

Thus the sole question presented by this appeal is whether the Borden Company in computing its tax base for the privilege license tax must include retail sales made beyond the corporate limits of the City of Phoenix.

This court has repeatedly held that the rule of statutory construction is that statutes imposing taxes will be most strongly construed against the government and

in favor of the taxpayer or citizen. Arizona Tax Comm. v. Dairy & Consum. Cooperative Ass'n, 70 Ariz. 7, 215 P.2d 235; Alvord v. State Tax Commission, 69 Ariz. 287, 213 P.2d 363; and that any doubts as to their meaning are to be resolved against the tax authority and in favor of the taxpayer. General Petroleum Corporation of California v. Smith, 62 Ariz. 239, 157 P.2d 356, 158 A.L.R. 364; Moore v. Smotkin, 79 Ariz. 77, 283 P.2d 1029.

The ordinance provides that the measure of the tax is "the amount or volume of business done by the persons on account of their activities", i. e., engaging or continuing within the City of Phoenix in the business of selling tangible personal property at retail. The "amount or volume of business done" is defined as "gross proceeds of sale or gross income".

Plaintiff concedes that the City of Phoenix could have measured the tax on the privilege of doing business based upon the gross amount of goods or products manufactured or processed within the corporate limits. The Phoenix City Council recognized the distinction in measuring the rate of tax imposed upon the privilege of engaging in the retail business and that imposed upon the privilege of engaging in the business of slaughtering, packing or processing meat products. Section 2, paragraph (c) of the ordinance levys a privilege tax in an amount equal to one-half of one per cent of the gross proceeds of sale or gross income upon

every person engaging or continuing *within* the City of Phoenix the business of selling personal property at retail. Whereas, paragraph (f) of § 2 of the ordinance imposes a privilege tax of one-sixteenth of one per cent upon the gross proceeds of sales derived from the business of slaughtering, packing or processing meat products.

■ It is not for this court to reconstruct the language of the ordinance so as to make the subject of the taxation the privilege of engaging in the business of processing dairy products within the City of Phoenix in lieu of engaging or continuing within the City of Phoenix the business of selling tangible personal property at retail. Gotlieb v. City of Birmingham, 243 Ala. 579, 11 So.2d 363.

■ We agree with the statement contained in the case of City of Sedalia ex rel. and to Use of Ferguson v. Shell Petroleum Corporation, 8 Cir., 1936, 81 F.2d 193, 196, 106 A.L.R. 1327, wherein the court said "there is a presumption that the governing body of the city was legislating with reference to the conduct of business within the territorial limits of the city, and there is nothing in the provisions of the ordinances indicating that it was the intention to give them extraterritorial effect."

We therefore hold that the only reasonable construction of the ordinance in question is that the measure of the tax as provided in the ordinance can only be based upon

the gross proceeds of sale or gross income from retail sales within the corporate limits of the City of Phoenix and not on retail sales beyond its corporate limits.

Judgment affirmed.

UDALL, C. J., and WINDES and STRUCKMEYER, JJ., concurring.

PHELPS, Justice (dissenting).

I regret that I cannot agree with the result reached by the majority members of this court. It is my view that they are repudiating the accepted theory of the court that the so-called sales tax act is not, in fact, a sales tax but is a tax imposed by the legislature for the privilege of conducting business in the state, or, as the case may be, by ordinance in the city in which the business is located; that the taxable incident or event under the act is *the engaging in business*" and not the sale. We have so held in a number of cases including State Tax Commission v. Quebedeaux Chevrolet, 71 Ariz. 280, 226 P.2d 549, and Arizona State Tax Commission v. Ensign, 75 Ariz. 220, 254 P.2d 1029; and we adhered to the rule in City of Phoenix v. Arizona Sash, Door & Glass Co., 80 Ariz. 100, 293 P.2d 438, 441, under an ordinance practically identical with the one under which the instant case is being decided. We said in the latter case:

" * * * It is immaterial that both the title and possession to a portion of

the tangible property sold passes to the purchaser outside the corporate limits of the city."

If the taxable incident is *the engaging in business in Phoenix*" then it must follow that it makes no difference whether the sale is consummated and title passes to the purchaser within or without the corporate limits of the city. It appears that the majority is undertaking to say that the business of The Borden Company is the "processing of milk" and, as I interpret its opinion, it holds that the sale of the milk as processed in the city is a part of the business in which The Borden Company is engaged, but, if the milk is sold outside the city, that sale is not a part of the business in which The Borden Company is engaged. Upon no other ground, as I view it, can the majority reach the conclusion that a sale of milk without the city limits is not subject to the tax. The majority admits in its opinion that The Borden Company "is clearly engaged in business in the City of Phoenix." If the sale of all of its milk is not an integral part of the business in which The Borden Company is engaged in the City of Phoenix, then the ordinance imposes no tax upon The Borden Company for sales of milk, either within or without the corporate limits of the city, because the ordinance makes the gross proceeds from the sales of milk processed by it the basis upon which the excise tax is computed. The ordinance doesn't say the gross proceeds of sales

made within the city, but the gross sales of milk or gross income from its *business activities*. The latter term, "business activities", is all-inclusive. It is not limited by any qualifying words or phrases.

The majority asserts that the gross income from the sale of milk within the City of Phoenix furnishes the basis for measuring the amount of the tax to be collected. As above stated nowhere does the ordinance limit the sales for taxing purposes to sales made within the corporate limits of the city. I believe the majority contends that the following portion of Ordinance No. G–93 (the ordinance here involved) furnishes the basis for its conclusion:

"Section 2. Imposition of the Tax. * * * [T]here is hereby levied * * * the privilege taxes measured by the amount or volume of business done by the persons on account of their business activities and the amounts to be determined by the application of rates against values, gross proceeds of sale, or gross income, as the case may be, in accordance with the following schedule:

*   *   *   *   *   *

"(c) At an amount equal to one-half of one per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within the City of Phoenix in the following businesses:

"1. Selling any tangible personal property whatsoever at retail, except bonds and stocks."

The majority relies specifically upon the following language to achieve the result reached by it: "gross income from the business upon every person engaging or continuing within the City of Phoenix in the following businesses." If we eliminate from that phrase the words "or continuing" which are surplusage and immaterial, we have the simple phrase "gross income from the business upon *every person engaging within the City of Phoenix in the following businesses";* and following the phrase we have designated the business of "selling any tangible personal property whatsoever at retail, except bonds and stocks."

To me the meaning of this language is as clear as the noonday sun. It is simply saying that the persons *must be engaged in business within the City of Phoenix,* that is, the business must be located in the City of Phoenix, and if the business is that of *"selling any tangible personal property whatsoever at retail,* except bonds and stocks", it is subject to the imposition of the tax on the gross proceeds of its sales, within or without the city, or gross income from such business at the rate fixed therein. Nothing could be more clear than that it merely provides that the business must be located in Phoenix. How the above language can be construed to mean that the sale must be made within the corporate

256

limits of Phoenix is beyond my comprehension. Although the opinion does not expressly overrule City of Phoenix v. Arizona Sash, Door & Glass Co., supra, it nevertheless constitutes an absolute contradiction to the conclusion reached in that case. We had the identical question raised there as raised here.

I am of the opinion that the case should be reversed for the reasons above stated.