410 So.2d 494 (1982)
Carolyn IVEY, Petitioner,
v.
CHICAGO INSURANCE COMPANY, Respondent.
No. 57129.
Supreme Court of Florida.
February 11, 1982.
*495 James M. Barton, II of Levin, Warfield, Middlebrooks, Mabie & Magie, Pensacola, for petitioner.
Robert P. Gaines of Beggs & Lane, Pensacola, for respondent.
ADKINS, Justice.
By petition for certiorari, we have for review a decision of the District Court of Appeal, First District, (Ivey v. Chicago Insurance Co., 372 So.2d 473 (Fla. 1st DCA 1979)), which allegedly conflicts with another district court of appeal decision, (United States Fidelity and Guaranty Company v. Curry, 371 So.2d 677 (Fla. 3d DCA 1979)), on the same point of law. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. (1972).
Petitioner, Carolyn Ivey (hereinafter petitioner), was a passenger on a motorcycle, owned and operated by William Vereeke, which was involved in an accident with an automobile owned and operated by Theodore Kast. At the time of the accident, the motorcycle was insured by respondent, Chicago Insurance Company, (hereinafter respondent), with liability coverage limits of $100,000 per person and $300,000 per accident. The Kast vehicle was insured with limits of $15,000 per person and $30,000 per accident.
Petitioner filed suit in circuit court seeking a declaratory judgment establishing that she had available, from respondent, uninsured motorist coverage in the amount of $100,000. Respondent's answer denied that the policy which it issued to Mr. Vereeke provided uninsured motorist coverage in such amount, and claimed that as to petitioner, the Kast vehicle was not an uninsured motor vehicle as that term is defined in section 627.727(2)(b), Florida Statutes (1975).
The trial court herein, on a motion by respondent for judgment on the pleadings, entered final judgment in favor of respondent, basing its decision upon the holding of Government Employees Insurance Company v. Taylor, 342 So.2d 547 (Fla. 1st DCA), cert. denied, 353 So.2d 680 (Fla. 1977). The District Court of Appeal, First District, affirmed the trial court in a per curiam decision without opinion. For the following reasons we quash the decision of the district court.
Florida law requires that all automobile liability insurance policies delivered or issued for delivery in this state include coverage for any bodily injury loss of the insured caused by the negligence of an uninsured motorist. See § 627.727, Fla. Stat. At the time that this cause arose, the term "uninsured motor vehicle" was defined to include "an insured motor vehicle when the liability insurer thereof ... [h]as provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist's coverage." See § 627.727(2)(b), Fla. Stat. (1975). The uninsured motorist provision thus also provided protection from underinsured motorists as well as from those with no insurance.
Petitioner asserts that in determining the "limits applicable to the injured person [in this case, petitioner] provided under his uninsured motorist's coverage", the words "his uninsured motorist's coverage" refer to the uninsured motorist coverage of another person's policy of which the injured is a beneficiary as well as to the uninsured motorist coverage of the injured's own policy. In simpler terms, petitioner's position is that she may "stack" the uninsured motorist coverages of Mr. Vereeke's policy and her own (of which we assume there is none), when computing the uninsured motorist coverage available to her. Thus, argues *496 petitioner, the limit of her uninsured motorist coverage is $100,000 (the amount available under Mr. Vereeke's policy), said amount exceeds the limits of Mr. Kast's liability policy (making Kast an uninsured motorist as defined in section 627.727(2)(b), Florida Statutes (1975)), and petitioner is entitled to the uninsured motorist coverage of Mr. Vereeke's policy.
Respondent, on the other hand, claims first, that the uninsured motorist coverage under the policy which it issued to Mr. Vereeke is limited to $15,000 per person and $30,000 per accident, and second, that, as to petitioner, Mr. Kast does not qualify as an uninsured motorist. In support of its second claim, respondent cites the decision in Taylor for the proposition that in computing her uninsured motorist coverage, petitioner may not include the uninsured motorist coverage available under Mr. Vereeke's policy. As noted before, both the trial court and the district court agreed with respondent, each citing Taylor in its opinion.
In Taylor, the injured party, Taylor, whose personal insurance had limits of $10,000 for injury to one person in one accident, was involved in a collision with a third party whose insurance had the same limits. At the time of the accident, however, Taylor was driving a vehicle owned by Jones, whose insurance had limits of $50,000 for one person in one accident. Taylor contended that the $10,000 coverage of his policy could be stacked on the $50,000 coverage of Jones' policy, thereby causing his uninsured motorist coverage to exceed the liability coverage of the third party, and entitling him to recover uninsured motorist benefits of up to $60,000 from his and Jones' insurance companies. The district court held that section 627.727(2)(b), Florida Statutes (1975), does not permit such stacking.
According to the Court in Taylor, the words "his uninsured motorist's coverage" refer to the coverage of the policy issued to the injured party and do not include the uninsured motorist coverage of another person's policy of which the injured, by having occupied the vehicle at the time of the accident, happens to be a beneficiary. The district court reasoned that "[s]uch other person's policy is that person's uninsured motorist coverage which that person, rather than the injured person, has purchased." Taylor at 548. We, however, disagree with the holding in Taylor, and are of the opinion that the words "his uninsured motorist's coverage" refer to the uninsured motorist coverage of another person's policy of which the injured party happens to be a beneficiary as well as to the uninsured motorist coverage of the injured's own policy.
We note, initially, that three recent district court decisions have rejected the holding in Taylor. See Cox v. State Farm Mutual Automobile Insurance Company, 378 So.2d 330 (Fla. 2d DCA 1980); Lezcano v. Leatherby Insurance Company, 372 So.2d 214 (Fla. 4th DCA 1979); and, United States Fidelity and Guaranty Company v. Curry, 371 So.2d 677 (Fla. 3d DCA 1979). The preceding three cases held that the words "his uninsured motorist's coverage" "refer to any uninsured motorist coverage which is otherwise available to the injured party." Cox at 332. Thus, according to those cases, petitioner would be entitled to stack her and Mr. Vereeke's uninsured motorist coverages in determining whether Mr. Kast is an "uninsured motorist" under the provisions of section 627.727(2)(b), Florida Statutes (1975). Although we are not bound by the district court decisions above, two points convince us that they reach the proper result.
First, if the tortfeasor here had no liability insurance, petitioner clearly would be entitled to stack the uninsured motorist coverages of her policy and Mr. Vereeke's policy. We so held in Sellers v. United States Fidelity and Guaranty Co., 185 So.2d 689 (Fla. 1966). Subsequent to that decision, chapter 71-88, Laws of Florida, broadened the definition of uninsured motorist coverage to provide protection not only from those who are uninsured, but also from those who, like Mr. Kast, are underinsured. See Williams v. Hartford Accident and Indemnity Co., 382 So.2d 1216 (Fla. 1980).
*497 Like the district court in Cox, we do not believe that when the legislature amended the law, broadening the definition of uninsured motorist to include those who are underinsured, it intended that distinctions be made between recoveries for injuries received from uninsured motorists and recoveries for injuries received from underinsured motorists. The policy reasons for providing uninsured motorist coverage  protection from losses caused by tortfeasors who have no liability insurance  are equally applicable in the underinsured motorist situation, where protection is required from losses caused by those with inadequate insurance. There is no reason to allow stacking in one situation while prohibiting it in the other.
Second, we note the change in the wording of section 627.727(2)(b) since this cause of action arose. In 1977, the legislature amended the statute by replacing the term "his uninsured motorist's coverage" with the term "uninsured motorist's coverage applicable to the injured person." See ch. 77-468, § 30, Laws of Florida. The change indicates that the insurance coverage which the injured is to include when determining whether a tortfeasor is an uninsured motorist is not limited to that provided by his own personal policy. The senate staff analysis and economic statement pertaining to chapter 77-468 states that the amendment "[c]larifies legislative intent that underinsured motorist protection follows the car rather than the person." Thus Mr. Vereeke's uninsured motorist coverage is applicable to petitioner, and may be included by petitioner in determining whether Mr. Kast is an "uninsured motorist" as defined by section 627.727(2)(b). In short, petitioner is entitled to stack the coverages.
Respondent argues that the 1977 amendment to the language of section 627.727(2)(b) post-dated the accident in question, had an effective date after the accident, and was not intended to operate retroactively to clarify the intent of the prior wording. Respondent further contends that had the amendment merely been intended to clarify the law, rather than to change it, the legislature would have so indicated and would not have made the amendment prospective in its operation.
We disagree. An act's legislative history is an invaluable tool in construing the provisions thereof. We believe that the 1977 amendment to section 627.727(2)(b) was intended to clarify the legislature's intention, and that the amendment should be considered in construing said law. As Justice Roberts noted:
The rule seems to be well established the interpretation of a statute by the legislative department goes far to remove doubt as to the meaning of the law. The court has the right and the duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation.
Gay v. Canada Dry Bottling Co. of Florida, 59 So.2d 788, 790 (Fla. 1952), quoting General Petroleum Corp. of Cal. v. Smith, 62 Ariz. 239, 157 P.2d 356, 360 (1945). Likewise was the observation made in Amos v. Conkling, 99 Fla. 206, 126 So. 283, 288 (1930):
[I]t is proper to consider, not only acts passed at the same session of the Legislature, but also acts passed at prior or subsequent sessions, and even those which have been repealed.
Thus we will consider the 1977 amendment when construing section 627.727(2)(b), Florida Statutes (1975), and do find that it indicates an intent on the part of the legislature that one in petitioner's position be allowed to stack the uninsured motorist coverage of policies of which she is a beneficiary when determining whether another party is an uninsured motorist.
For the foregoing reasons, we disapprove the rulings of the district and trial courts herein which held that the words "his uninsured motorist's coverage" as used in section 627.727(2)(b), Florida Statutes (1975), refer to the coverage of the policy issued the injured person and do not include the uninsured motorist coverage of another person's policy of which the injured person is a beneficiary. The decision of the district court of appeal is quashed and the cause is remanded with instructions to further remand the same to the trial court for determination *498 of whether the policy in question provides uninsured motorists coverage, and if so, the limits thereof, and for resolution in conformity herewith.
It is so ordered.
SUNDBERG, C.J., and BOYD and ALDERMAN, JJ., concur.
McDONALD, J., concurs with an opinion.
OVERTON, J., dissents.
McDONALD, Justice, concurring.
I concur. In doing so I note that under the uninsured portion of Chicago's policy the following provision exists:
II. Person Insured. Each of the following is an insured under this insurance to the extent set forth below:
* * * * * *
(b) Any other person while occupying an insured highway vehicle;
The plaintiff was occupying an insured highway vehicle and is thus an insured under Chicago's policy. She would have the same rights and same coverage that the named insured has. She has a right, therefore, to litigate the issue of whether there is $100,000 coverage or $15,000 coverage on her underinsured motorist claim.