935 P.2d 906

**SMITH'S FOOD AND DRUG CENTERS, INC., an Arizona corporation, Plaintiff Counterdefendant Appellant, Cross Appellee,**

v.

**ARIZONA DEPARTMENT OF REVENUE, Defendant Counterclaimant Appellee, Cross Appellant.**

No. 1 CA-TX 95-0011.

Court of Appeals of Arizona, Division 1, Department T.

Nov. 12, 1996.

Review Denied April 29, 1997.*

Beus, Gilbert & Morrill by K. Layne Morrill and Dalon J. Morgan, Phoenix, for Plaintiff Counterdefendant Appellant, Cross Appellee.

Grant Woods, Attorney General by Gail H. Boyd, Special Assistant Attorney General, Phoenix, for Defendant Counterclaimant Appellee, Cross Appellant.

## OPINION

KLEINSCHMIDT, Judge.

The question in this case is whether the taxpayer, Smith's Food & Drug Center's Inc., is entitled to subtract the amount it paid in federal income tax from its Arizona income tax for the year 1990. The resolution of the question turns on whether Smith's tax year began before the effective date of the repeal of the law that allowed such a subtraction. We hold that Smith's tax year did not begin before the effective date of the repeal, and we affirm the summary judgment that the tax court entered in favor of the Arizona Department of Revenue.

## FACTS

Arizona's current income tax scheme provides that a corporation's "Arizona gross income" shall be the same as its "federal taxable income for the taxable year." Ariz.Rev. Stat. Ann. ("A.R.S.") § 43–1101(1) (1980 & Supp.1996). This is the starting figure from which, after additions and deductions as mandated and allowed by statute, the corporation's "Arizona taxable income" is derived. A.R.S. § 43–1101(2) (1980 & Supp.1996).

---

* Feldman, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Before 1990, Arizona allowed a taxpayer to subtract "[t]he amount of any federal income taxes paid, accrued or withheld during the taxable year" from its Arizona gross income. *See* A.R.S. §§ 43–1022(11) (1980) (current version at A.R.S. § 43–1022 (Supp.1996), 43–1122(1) (1980)). In 1990, this law was amended and applied retroactively to taxable years beginning from and after December 31, 1989. 1990 Ariz. Sess. Laws 3d Spec. Sess. Ch. 3, §§ 28 & 42.

Smith's, like most other grocery businesses, uses a fifty-two-to-fifty-three-week tax year for the purpose of achieving uniform and comparable accounting periods. It maintains its accounting records in periods of full weeks with each period ending on the same day of the week. The accounting year always ends on the date on which that day last occurs in the calendar month, or alternatively, on the date on which the day falls nearest to the last day of a calendar month. Each accounting year has four thirteen-week accounting periods except once every sixth year the accounting year has fifty-three weeks.

When Smith's filed its return for the 1990 tax year, it used December 31, 1989, as the start of its tax year. Since that date precedes January 1, 1990, the effective day of the repeal of the provision allowing the subtraction of the federal tax, Smith's subtracted the federal tax from its Arizona gross income.

The Arizona Department of Revenue disallowed the subtraction and issued a notice of assessment for additional taxes, interest and penalties. Smith's pursued the matter in the tax court, which, on summary judgment, held in favor of the Department.

### THE DEPARTMENT'S ARGUMENT

The Department acknowledges that Smith's has consistently used the fifty-two-to-fifty-three-week tax year since it began doing business in Arizona. It nonetheless insists that Smith's tax year for the period in question began on January 1, 1990. The Department's argument depends entirely on whether both sections of a provision of the federal Internal Revenue Code have been incorporated into state law. That provision

is 26 U.S.C. section 441(f) (1988 & Supp. 1996). It reads:

Election of Year Consisting of 52–53 Weeks.—

(1) General Rule.—A taxpayer who, in keeping his books, regularly computes his income on the basis of an annual period which varies from 52 to 53 weeks and ends always on the same day of the week and ends always—

(A) on whatever date such same day of the week last occurs in a calendar month, or

(B) on whatever date such same day of the weeks falls which is nearest to the last day of a calendar month,

may (in accordance with the regulations prescribed under paragraph (3)) elect to compute his taxable income for purposes of this subtitle on the basis of such annual period. This paragraph shall apply to taxable years ending after the date of the enactment of this title.

(2) Special rules for 52–53 week year.—

(A) Effective dates.—In any case in which the effective date or the applicability of any provision of this title is expressed in terms of taxable years beginning, including or ending with reference to a specified date which is the first or last day of a month, a taxable year described in paragraph (1) shall (except for purposes of the computation under section 15) be treated

(i) as beginning with the first day of the calendar month beginning nearest to the first day of each taxable year, or

(ii) as ending with the last day of the calendar month ending nearest to the last day of such taxable year. . . .

The Department takes the position that when the legislature decreed that a taxpayer's Arizona gross income would be the same as its federal taxable income, it necessarily imported into state law the "special rules" embodied in section 441(f)(2)(A)(i) and (ii). The Department says that the intention to incorporate the effective date of a change in federal law is found in A.R.S. section 43–102 (Supp.1996). That statute provides:

A. It is the intent of the legislature by the adoption of this title to accomplish the following objectives:

. . . .

2. To adopt the provisions of the federal Internal Revenue Code relating to the measurement of taxable income for corporations, . . . to the end that taxable income reported each taxable year by a corporation, . . . to the internal revenue service shall be the identical sum reported to this state, subject only to modifications contained in this title.

3. To achieve the results in paragraphs 1 and 2 by the application of the various provisions of the federal Internal Revenue Code relating to the definitions of income, exceptions, deductions, accounting methods, taxation of . . . corporations . . . and other pertinent provisions relating to gross income as defined, resulting in an amount called . . . taxable income for corporations . . . in the Internal Revenue Code.

The Department asserts that it has no power to allow taxpayers to use a taxable year for which there is no express legislative authority. The only such authorization for such a fifty-two-to-fifty-three-week tax year, it says, is found in A.R.S. section 43–102. If the Department is correct, Smith's tax year began on January 1, 1990, and it may not deduct the federal taxes it paid in 1990.

## THE TAXPAYER'S ARGUMENT

Smith's concedes that its federal and state tax years must correspond exactly. It argues, however, that the "special rules" found in 26 U.S.C. section 441(f)(2)(A)(i) and (ii) do not apply because A.R.S. section 43–102, which incorporates parts of the internal revenue code into state law, is narrow and does not allow the Department *carte blanche* to use the federal code at will and for all purposes. Smith's points out that section 43–102(A)(2) restricts its incorporation of federal law to matters relating to the measurement of taxable income and says nothing about incorporating a federal tax year or any provision relating to the effective date of any statute.

Smith's has a second argument. It says that the state statutes relating to accounting periods are ambiguous. Arizona Revised Statutes section 43–901 (1980) provides that taxable income shall be computed on the basis of the taxpayer's "annual accounting period, fiscal year or calendar year." Another statute, A.R.S. section 43–104(7) (Supp. 1996) defines fiscal year as "an accounting period of twelve months ending on the last day of any month other than December." Thus, there is no express provision in the Arizona statutes which either adopts or recognizes a fifty-two-to-fifty-three-week tax year. This gap in the law, Smiths' argues, should be bridged to its advantage by requiring the Department to accept the fifty-two-to-fifty-three-week accounting period as a means of reconciling an ambiguity in state law, not by adopting any federal code provision.

Finally, Smith's argues that the Department's interpretation of section 43–102 would render A.R.S. section 43–901 redundant. That provision requires that taxable income be computed on the basis of an accounting period and indicates an accounting period as either a calendar year or a fiscal year. This legislation, Smith's says, would be unnecessary if the legislature had adopted the federal version of a tax year.

## THE FEDERAL CODE IS INCORPORATED INTO STATE LAW

It is entirely possible, as Smiths' suggests, that the legislature never gave specific thought to authorizing a fifty-two-to-fifty-three-week tax year or how taxpayers who use such a year are to be treated with respect to when changes in the law become effective. That does not mean, however, that the legislature, in incorporating the federal code to facilitate the equation of "federal taxable income" with "Arizona Gross income," did not adopt 26 U.S.C. section 441(f). The spirit and intent of section 43–102 is broader than Smith's would concede. The term "accounting methods" as used in section 43–102, the incorporating statute, is certainly broad enough to encompass the concept of a fifty-two-to-fifty-three-week tax year. What the legislature did, in essence, was say "use whatever fits from the federal code to make

the equation work." Since there is no provision for a fifty-two-to-fifty-three-week tax year in state law, and since the two tax years must be identical, the federal code is the authority for the use of the fifty-two-to-fifty-three-week tax year.

An argument can be made, however, for the proposition that even if the authority to use a fifty-two-to-fifty-three-week tax year derives from the federal code, the legislature did not *necessarily* incorporate the special rules found in 26 U.S.C. section 441(f)(2) into Arizona law. Subsection (2) simply lays down a federal rule for when new provisions of federal tax law become effective. Subsection (2) does not change a taxpayer's tax year. Since that is the case, its incorporation into Arizona law is not absolutely essential to the orderly and equitable application of state tax law.

There are several reasons why we believe, however, that subsection 2 has been incorporated into state law. First, Smith's does not argue otherwise. In its reply brief, Smith's says:

Smith's is not attempting to obtain the benefits of section 441 and avoid the burdens of section 441(f)(2). In fact, Smith's concedes that, if section 441(f) applies in this case, the entire section applies including subsection (f)(2). Smith's merely asserts that the Department, through proper administrative action, has permitted 52/53 week accounting periods and that, just as in *Allentown*, it is not section 441, but rather state law, which allows that accounting period.

Second, it seems highly unlikely that the legislature, in the rather broad exercise of incorporation that section 43–102 represents, intended to pick and choose among the parts of a single narrow provision of the federal code, applying some but not others. This is particularly true when a failure to adopt the special rules would result in a significant loss of state revenue simply because the taxpayer's accounting period falls shy of the effective date of the repeal by a single day.

The Department cites several cases in support of its position. In *Weyerhaeuser Co. v. Department of Revenue*, 127 Ill.App.3d 323, 82 Ill.Dec. 733, 469 N.E.2d 267 (1984), the court was concerned with the effective date for the repeal of a provision that was favorable to the taxpayer's computation of capital gains. An Illinois statute provided that for state tax purposes a person's taxable year would be the same as his taxable year for federal income tax purposes. Another Illinois statute provided that terms used in the Illinois revenue code would have the same meaning as terms used in a comparable context in the federal code. The taxpayer, which operated on a fifty-two-to-fifty-three-week tax year, had an argument identical to Smith's. It claimed the legislature had not incorporated the special rules applicable to fifty-two-to-fifty-three-week years found in subsection (2) of the federal code. The Illinois court, after noting that Illinois statutes provided that a taxpayer's state and federal tax year should be the same, disagreed, saying:

As we have noted section 441(f)(2)(A) allows a taxpayer to select a 52–53 week fiscal year but also limits that right by providing that for purposes of determining the applicability of statutes which become effective on the first day of a month such 52–53 week fiscal years will be treated as beginning with the first day of the calendar month beginning nearest to the first day of that taxable year. We find no basis for concluding that in determining what constitutes a 52–53 week fiscal year as defined in the federal statute we should be limited to only the first, permissive, portion of that statute. The second portion is applicable because the Illinois statute setting out the effective date for abolition of the deduction is expressed in terms of a taxable year beginning with the first day of a month, namely January 1, 1971.

82 Ill.Dec. at 735, 469 N.E.2d at 269.

We see nothing to distinguish the case before us from *Weyerhaeuser*. It is true that the Illinois statute contained a provision to the effect that terms in the state and federal law shall be given the same meaning. The absence of a similar provision from Arizona law makes no difference, however, because we are concerned with the adoption of an entire provision, not with the definition of a term.

In *Eastman Kodak Co. v. Sullivan,* 32 Conn.Supp. 127, 342 A.2d 913 (1975), the question was when a new state tax became effective. The taxpayer owed the new tax only if the special rules embodied in 26 U.S.C. section 441(f)(2) applied. Connecticut had a statute which defined fiscal year as:

the income year ending on the last day of any month other than December or an annual period which varies from fifty-two to fifty-three weeks elected by the taxpayer in accordance with the provisions of the internal revenue code.

342 A.2d at 914.

The court, after rejecting several peripheral arguments raised by the taxpayer, concluded:

A study of the legislative history of the taxing statutes which permit the election of a variable fifty-two to fifty-three week year as chosen by the plaintiff indicates that the laws were adopted for the convenience of the taxpayers so that they could compute their taxable income on the same basis as that used for federal taxation. Therefore, when, in defining "fiscal year," General Statutes § 12–213 uses the phrase "in accordance with the provisions of the internal revenue code," it is logical to assume that the legislature intended to adopt all provisions of the code pertinent to the effective use of the fifty-two to fifty-three week accounting method. To look only at the provision of the code establishing the method and to ignore the provisions providing for the effect of such a selection is not logical or in accord with obvious legislative intent.

342 A.2d at 915.

■ We agree with the courts that decided *Weyerhaeuser* and *Eastman Kodak.* While a fifty-two-to-fifty-three-week tax year could be used without adopting the special rules embodied in subsection (2), those rules are obviously intended to prevent the privilege of the use of such a fifty-two-to-fifty-three-week tax year from resulting in a windfall to taxpayers just because the start of such a tax year has crept backward in the calendar year. We believe that the broad language of A.R.S. section 43–102(A)(3), which applies the provisions of the federal code relating to, among other things, "accounting methods," was intended to incorporate the special rules found in U.S.C. section 441(f)(2). In reaching this conclusion we have not forgotten that ambiguities in the tax law are to be construed in favor of the taxpayer. *Wilderness World Inc. v. Department of Revenue,* 182 Ariz. 196, 895 P.2d 108 (1995). We see the problem which confronts the parties in this case as not so much one of ambiguity, as one in which the legislature attempted to deal with a myriad of details by means of a broad incorporation of the federal code. It is not surprising that the adoption of such an approach leads to a taxing scheme that contains some redundancy.

### THE CROSS–APPEAL

■ The Department argues that the tax court erred when it upheld the board's abatement of the penalty for failure to make a timely payment. Relying on *People of Faith v. Department of Revenue,* 171 Ariz. 140, 829 P.2d 330 (App.1992), it insists that Smith's failure to pay constituted willful neglect and that it did not carry its burden of showing reasonable cause for not paying. The Department points to the fact that the year in question was the first time that Smith's treated its fiscal year as beginning in December instead of on January 1. It asserts that Smith's employee's affidavit about advice Smith's received from its accountants is insufficient to justify the conclusion that Smith's was exercising "ordinary business care and prudence."

■ Penalties are designed to secure compliance with the law, not to punish. *General Petroleum Corp. of Cal. v. Smith,* 62 Ariz. 239, 243, 157 P.2d 356, 358 (1945). Smith's position has sufficient plausibility to support the action of the board and the tax court in remission of penalties.

The judgment of the tax court is affirmed in all respects.

SULT, P.J., concurs.

GERBER, Judge, dissenting.

I respectfully part company with the majority on the conclusion that the broad lan-

guage of A.R.S. section 43–102(A)(3), regarding federal "accounting methods," intends to incorporate the special rules found in 26 U.S.C. section 441(f)(2) for the purpose of determining eligibility for deductions provided by Arizona law.

A.R.S. section 43–102(A)(3) expresses the legislature's intent to graft onto state tax law a broad range of federal Internal Revenue Code provisions relating to taxable corporate income. The result intended is that federal taxable income of a corporation be the identical sum reported to this state's revenue service. A.R.S. section 43–1101(1) and (2) effect this intention by defining a corporation's "Arizona gross income" as its "federal taxable income for the taxable year."

The operative language of section 43–102 expresses an intention to adopt only those federal tax provisions that yield a corporation's bottom-line federal taxable income. Given the precise language of subsections 43–102(A)(2) and (3), and the limited way A.R.S. section 43–1101(1) and (2) effectuate their objective, I can't find in A.R.S. section 43–102(A)(3) a legislative intention to incorporate 26 U.S.C. section 441(f) for any purpose other than determining a corporation's federal taxable income.

Arizona's incorporation of section 441(f)(1) by way of A.R.S. section 43–1101(1) already encompasses section 441(f)(2) to the extent appropriate to its language, because section 441(f)(2) will affect the income or deductions to be included in the calculation of federal taxable income for the taxable year when applied in the federal taxing scheme as Congress intended. A.R.S. section 43–102(A)(3) does not reveal any legislative intent to incorporate 26 U.S.C. section 441(f)(2) for any additional purpose beyond the one that section 43–102(A)(2) states expressly.

As to the majority's reliance on case law, *Weyerhaeuser* depends on Illinois Income Tax Act section 1–102 whose broad language shows an intent to adopt both sections (1) and (2) of 26 U.S.C. section 441(f). Arizona has no such broad statute. As to *Eastman Kodak*, that case assumes what this court's majority seeks to prove, namely that a state legislature meant to adopt the provisions of section 441(f)(2). A legislative decision to

adopt section 441(f)(1) hardly shows intent to adopt section 441(f)(2). Adoption of one does not entail the other. For these reasons, I cannot conclude that "accounting methods" incorporates section 441(f)(2). Therefore, I would reverse the tax court on the 52–53 week issue.